**In the Matter of Robert T. McCUNE and Pamela J. McCune, Debtors.**

**AMERICAN BANK OF RAYTOWN, Plaintiff/Appellee,**

**v.**

**Robert T. McCUNE and Pamela J. McCune, Defendants/Appellants.**

**Bankruptcy No. 86–01840–3.
Adv. No. 86–0497–3.
Civ. No. 87–0383–CV–W–6.**

United States District Court, W.D. Missouri, W.D.

May 4, 1988.

Jeff A. VanZandt, Kansas City, Mo., for plaintiff/appellee.

James H. Thompson, Jr., North Kansas City, Mo., for defendants/appellants.

**MEMORANDUM AND ORDER**

SACHS, District Judge.

In 1983, Pamela J. Dunbar McCune, debtor herein, purchased a 1983 fiberglass boat, boat trailer, and outboard motor, financing the purchase through a loan secured by a promissory note in favor of American Bank of Raytown. At the time she executed the note, debtor also signed a document entitled "Security Agreement," which stated in relevant part:

I give you a security interest in the following described property ... [description of boat, trailer and motor].

I am also giving you a security interest in ... all forms of cash and non-cash

proceeds ... of ... any of the collateral.... The claim to proceeds does not authorize the sale of any part or all of the collateral ... without your express prior written consent....

By granting you a security interest in the collateral, I intend to provide you with security for payment and performance of all my obligations to you.... If I don't repay any amounts I may owe you, or if I break a promise I've made in any loan or credit agreement I may have with you, you can take the collateral ... and sell it as provided below.

.    .    .    .    .

I won't sell, transfer, lease or give the collateral to anyone else.... I agree to help you do all that's necessary to protect your security interest in the collateral.

At the time these transactions took place, debtor turned over title to the boat, motor and trailer to the bank; shortly thereafter, titles to the boat and motor, but not the trailer, were returned to debtor by the bank. Tr. at 7, 8, 13. In late 1983 or 1984, debtor allowed her former husband to sell the boat and motor, but not the trailer, along with other assorted items of indeterminate value, to a business associate as part of a business transaction of which debtor was not otherwise a part. Tr. at 10. None of the proceeds from the sale went to the American Bank of Raytown.

In 1985, debtor stopped paying on the note in question and was thereafter in default under the terms of the Security Agreement. In 1986 debtor and her former husband filed a petition in bankruptcy under Chapter 13 of the Bankruptcy Code, seeking, among other things, to discharge the debt to American Bank of Raytown. American Bank filed this action contesting discharge of the debt under 11 U.S.C. § 523(a)(6), alleging that debtor's sale of the boat and motor was a willful and mali-

cious conversion of the bank's interest in those items.[1] On March 20, 1987, the bankruptcy court denied dischargeability of McCune's indebtedness to American Bank.[2] 82 B.R. 510. The case comes before this court on debtor's appeal of that denial.

This court is limited in its review of the factual findings of the bankruptcy court by Bankruptcy Rule 8013, which provides that the bankruptcy court's "[f]indings of fact shall not be set aside unless clearly erroneous." The bankruptcy court's conclusions of law are subject to de novo review. *Matter of Newcomb*, 744 F.2d 621, 625 (8th Cir.1984).

Appellant argues first that discharge of her debt was wrongly denied because there is no evidence that she signed the financing statement filed by the bank in connection with its security interest in the boat, motor and trailer, making the financing statement fatally flawed and ineffective. Appellee bank responds that the financing statement was in fact signed by the debtor and attaches the original documents as proof of its assertion.

The financing statement submitted by the bank contains no signature of the debtor. While there are conditions under which the attached Security Agreement, if filed with the financing statement (an unanswered question in this case), would satisfy the requirements of RSMo § 400.9–402 for a valid financing statement, it will be unnecessary to make that determination in this case, since perfection of the security interest was not necessary to protect the bank's interests in the collateral as against the original debtor. Perfection protects the bank's rights as against third parties, an issue not present in this case. The Security Agreement admitted into evidence was signed by the debtor, described the collateral accurately, and was a writing evidencing the grant of a security interest. Therefore, it met the require-

---

**1.** 11 U.S.C. § 523(a)(6) denies discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

**2.** As Robert McCune, debtor's former husband, was not a party to the note or Security Agree-

ment, the court dismissed this action as to him. Although there is some evidence to suggest that he did in fact participate in the alleged conversion and "enjoyed the benefits thereof," that issue is not before this court on appeal.

ments of a binding security agreement between the debtor and bank as set out in RSMo § 400.9–203(1)(b), *Shelton v. Erwin*, 472 F.2d 1118 (8th Cir.1973), and would serve as the basis for claims of conversion of the collateral under appropriate circumstances.

■ The issue before the court reduces, therefore, to a determination of whether the bankruptcy court correctly decided that debtor had willfully and maliciously converted the bank's collateral in contravention of the Security Agreement between the parties, thus precluding discharge of the underlying debt. The Eighth Circuit Court of Appeals construed § 523(a)(6) in the context of an alleged conversion of collateral somewhat similar to these facts in *In re Long*, 774 F.2d 875 (1985). It was stressed in that case that the "willful and malicious" inquiry is actually a dual analysis, with the result that denial of discharge under § 523(a)(6) is appropriate only after a finding that the purported injury was both willful *and* malicious. Willfulness was defined as "intentional or deliberate," "headstrong and knowing." Malice was described as "going beyond recklessness and beyond intentional violation of a security interest," to encompass the concept of intentional harm. Therefore, a finding of malice in this context requires a finding that the conduct complained of is "targeted at the creditor ('malicious'), at least in the sense that the conduct is certain or almost certain to cause financial harm." An objective evaluation of the likelihood of harm may be used in evaluating intent.

In applying these standards to the facts of *Long*, it was acknowledged that the debtor knew that the diversion of the funds at issue was contrary to the contractual arrangement he had with the creditor; therefore, the willfulness component of the analysis was satisfied. As to malice, how-

ever, it was noted that although the act itself was willful, the injury was not intended. There was undisputed, credible testimony that the debtor's concededly deliberate acts contravening the Security Agreement were committed in a desperate attempt to save his company and prevent loss to all the creditors. No reviewer of the facts had concluded otherwise. Although the debtor may have committed a tort, it had not been shown that he intended or fully expected to harm the creditor's economic interests (as opposed to the Security Agreement), and discharge was permitted.

The standard of intentional harm has been applied in this circuit in cases since *Long* to permit discharge in cases in which the debtor's actions were concededly wrongful and deliberate. *E.g., Cassidy v. Minihan*, 794 F.2d 340 (8th Cir.1986) (drunk driving); *In re Robinson*, 76 B.R. 145 (Bkrtcy.W.D.Mo.1987) (deliberate copyright infringement); *In re Vandrovec*, 61 B.R. 191 (Bkrtcy.D.N.D.1986) (sale of pledged corn); *In re Durbin*, 58 B.R. 259 (Bkrtcy.E.D.Mo.1986) (proceeds from sale of collateral commingled with personal funds); *In re Burgstaler*, 58 B.R. 508 (Bkrtcy.D.Minn.1986) (insufficient funds checks); *In re Nelson*, 67 B.R. 491 (Bkrtcy, D.Minn.1985) (sale of pledged cattle). Conversely, in a situation in which the ensuing harm from debtor's deliberate actions was almost inevitable, though perhaps not fully desired, discharge has been denied. *E.g., In re Hartley*, 75 B.R. 165 (Bkrtcy.W.D. Mo.1987) (throwing firecracker into unventilated, gasoline fume-filled room), affirmed by this court April 28, 1988.[3]

■ Application of these principles to the facts of this case leads to the conclusion that the bankruptcy court's analysis was defective, as it erroneously lumped together the elements of malice and willfulness into one "amorphous standard."

---

**3.** Congress has now adopted a "drunk driving" exception to dischargeability, suggesting that at least in a personal injury context, the concept of constructive malice has substantial appeal. 11 U.S.C. § 523(a)(9) (West Supp.1984). Under § 523(a)(6), such an attitude may express itself in more rigorous skepticism of a good faith defense in personal injury cases. Creditors in

bankruptcy seeking the extraordinary right to pursue a particular indebtedness throughout the lifetime of a debtor would be well advised to seek favorable fact-finding under § 523(a)(6), rather than a judicial weakening of the difficult standards established by the statutory language chosen by Congress.

*Long,* 774 F.2d at 881. The bankruptcy court's rationale for denying discharge was as follows:

> This court reads the *Long* decision ... to work a substantial alteration in the law whereby the former "subjective" standard is no longer followed and a more salutary rule is to be employed whereby the debtor is responsible for the natural effect of his or her actions. Thus, in the action at bar, the ambiguity inserted into the situation by the plaintiff's returning the certificates of title may well have precluded any finding of "willful and malicious" intention under the former rule which measured the action *only* by the *subjective* claim of good faith behind it. Now, however, the court is obliged to assess whether the debtor knew or should have known that the conversion would cause harm to the plaintiff. In this case, there was no indication that the security agreement itself was cancelled and returned to the defendant Pamela J. McCune, nor that she made any inquiry to discover whether the return of the certificate was the equivalent of such cancellation. Had she inquired, she would have discovered that the plaintiff claimed a perfected security interest by reason of the filing of the financing statements. And, further, in this case, the court is faced with the aphorism which has some universal applicability in all litigation—ignorantia legis neminem excusat ("Ignorance of the law excuses no one."). Under that principle, Mrs. McCune was bound to know of the existence of a perfected security interest.

Order Denying Dischargeability at 514–15.

The foregoing reveals that the bankruptcy court found in *Long* a comprehensive return to an "objective" standard for adjudging willfulness and malice, said to have prevailed generally in applying the former Bankruptcy Act. *See Matter of Norton,* 21 B.R. 725, 728–29 (Bkrtcy.W.D.Mo.1982), where a change of direction toward a subjective standard was noted. The *Long* ruling marks no such retrogression (or "salutary" change) in statutory interpretation. When analyzing malice, it was simply noted that objective considerations were pertinent. Intent to injure others need not be appraised without some realistic testing of probabilities. The credibility of a disclaimer of such intent need not be decided in an evidentiary vacuum.

*Long* specifies, however, that the elements of willfulness and maliciousness are analyzed separately, and that both must be found in order to justify denial of dischargeability. The modest bow to realistic appraisal of the facts in applying the strikingly subjective term, malice, did not signal for this court any major shift in appraising willfulness. While that term, too, is strikingly subjective,[4] the trier of facts is not confined to a debtor's self-justifying testimony but may consider whether the testimony is credible. The most pertinent phrase in *Long* in this regard is that willfulness is normally tested by whether the action violating the rights of another is "headstrong and knowing." 774 F.2d at 881. In the present case, the determination can be made largely by considering this debtor's degree of sophistication.

If, as the bankruptcy opinion suggests, it is unlikely the debtor had a real understanding of the breach of legal rights that was occurring, this will be dispositive in her favor.[5] The opinion of the bankruptcy court, together with the record, strongly indicate that willful misconduct cannot be

---

4. Statutory references to willfulness almost invariably require fact-finding using a subjective standard. *E.g., United States v. Jerde,* 841 F.2d 818, 822 (8th Cir.1988); *Arrar v. St. Louis Shipbuilding Co.,* 780 F.2d 19, 20 (8th Cir.1985); *United States v. Ott,* 741 F.2d 226, 229 (8th Cir.1984).

5. Debtor testified that when she received the titles to the boat and motor she assumed that since there were no liens noted on them she was free to transfer the property. Tr. at 7. Some evidence of her good faith in this belief is that she did not sell the trailer though requested to do so, because she had not received title to it and assumed this meant that there was a lien against it, preventing its transfer. Tr. at 7–9, 11, 14. The bankruptcy court accepted the fact that plaintiff's return of the titles had inserted ambiguity into the situation and observed that this ambiguity might well have precluded a finding of willful and malicious intention under a subjective standard.

found in this case. This court, however, is not a primary trier of facts. The bankruptcy court seems to have avoided the question by presuming legal sophistication, and declining to evaluate testimony of confusion. The court should reconsider the facts, in light of this ruling. It is, therefore,

ORDERED that the order of the bankruptcy court denying discharge of debtor's obligation is REVERSED. This action is REMANDED to the bankruptcy court for further proceedings to determine the question of willfulness (and, if necessary, malice) in accordance with this opinion.