In the Matter of Lonnie E. REAVIS and Mary Lou Reavis a/k/a Mary Lou Daugherty d/b/a L & M Trucking, Debtors.

ASSOCIATES COMMERCIAL CORP., Plaintiff,

v.

Lonnie E. REAVIS and Mary Lou Reavis, Defendants.

Bankruptcy No. 87–01567–SW–7–DJS. Adv. No. 87–0553–SW–7–DJS.

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

July 21, 1988.

On Motion to Alter or Amend Judgment Oct. 6, 1988.

Robert W. Stillings, Springfield, Mo., for plaintiff.

John A. Love, Springfield, Mo., for defendants.

DENNIS J. STEWART, Chief Judge.

The plaintiff requests that debtors be denied their discharges in bankruptcy and that the indebtedness owed to it by debtors be declared to be nondischargeable in bankruptcy.[1] Plaintiff alleges that the debtors removed, concealed or mutilated property in violation of section 727(a)(2) of the Bankruptcy Code; that they failed to explain satisfactorily a deficiency of assets to meet their liabilities in violation of section 727(a)(5); and that they refused to obey a lawful of the court in violation of section 727(a)(6)(A). In the alternative,[2] plaintiff alleges that the debtors willfully and maliciously injured property of the plaintiff in violation of section 523(a)(6) of the Bankruptcy Code. The merits of this action came on before the bankruptcy court for hearing on May 13, 1988, in Joplin, Missouri. The plaintiff appeared by counsel, Robert W. Stillings, Esquire, and the debtors appeared personally and by counsel, John A. Love, Esquire.

The evidence which was then adduced demonstrated that the debtors obtained possession of a 1985 Kenworth truck in late 1984, under an agreement with the plaintiff whereby the debtors were to purchase the truck on time payments[3]; that the plaintiff retained a valid and perfected security interest in the truck; that, ultimately, the debtors fell behind in making their required payments under the governing note and security agreement during the course of their chapter 13 proceedings[4]; that they nevertheless admittedly continued to use the truck in their hauling operations[5]; that, consequently, on the motion of the plaintiff, the bankruptcy court issued its order on October 21, 1987, directing the debtors to return possession of the vehicle to the plaintiff; that this order was not honored by the defendants until December 19, 1987, when the truck was returned, according to the instructions of the plaintiff, to the premises of Ozark Kenworth; that, according to the uncontradicted testimony of the debtor Lonnie E. Reavis, he honored the court's order of October 21, 1987, as soon as he heard about it, because he had been on the road with the truck until shortly before December 19, 1987, and did not learn of the court's order until shortly before that date; and that, while the truck was in the debtors' possession, it had undergone changes which the plaintiff contends warrant either the denial of discharge or the entry of a decree of nondischargeability; that the engine and transmission which had been in the vehicle at the time of its being given by plaintiff to the debtors had been replaced by another engine and transmission; that, according to the testimony of Mr. Reavis, he had no knowledge of such changes, although at one point he had taken the truck into a repair shop in a distant state for major repairs to the engine, and it is possible that parts of the engine may have been replaced so as to result in the appearance of a new

1. The court treats these requests as alternative forms of relief for the reason that, if debtors are denied discharges, a declaration that the indebtedness owing to plaintiff is nondischargeable will be superfluous. Therefore, the court will address the issue of dischargeability only if plaintiff's objection to the discharges of debtors are denied.

2. See note 1, *supra.*

3. The evidence before the court does not reveal any serious controversy respecting this fact.

4. See note 3, *supra.*

5. There is no indication in the evidence, however, that the debtors did not, during at least part of the time in question, have an intention to cure the defaults owed to the plaintiffs.

serial number on the engine; that there was no evidence which indicated that the new engine was appreciably inferior to the engine which was replaced and, if so, the amount of value by which the new engine was inferior to the old engine; that, similarly, there was no evidence that the new transmission was inferior to the old transmission and no evidence of the monetary value to be assigned to the alleged depreciation; that the right portion of the windshield had been broken or cracked; that, according to the testimony of Mr. Reavis, which was uncontradicted on this particular issue, the breaking or cracking resulted from a rock striking the windshield approximately 6 months after he took possession of the truck; that the left hand spotlight and the radio antenna which were not on the truck when it was returned to the plaintiff were defective and had been removed for that reason from the truck by Mr. Reavis before he knew that he was under a court order to return the truck to the plaintiff; that the original radio had been replaced by Mr. Reavis when it stopped working and that the radio covers were never replaced after the installation of the replacement radio; that the panels under the cab and sleeper were missing because Mr. Reavis removed them when the decorative chrome on them began to peel off; that the truck bumper had been replaced in order to improve the appearance of the truck and that it had been damaged while the truck was in the normal course of operation; that Mr. Reavis replaced one of the fuel tanks with a used tank that he already owned after the original tank was damages in an accident; that the tired were worn; that the right rear brake drum had blown out during Mr. Reavis' last trip in the vehicle; that the right rear brake assembly, the air suspension bags, and the crosstube support between the fuel tanks were damaged; that the speedometer cable was broken; that the rear frame of the truck had been cut off with a torch, according to the testimony of Mr. Reavis, to improve the truck's operating capacity and maneuverability; that the forward rear axle had been switched; that the indicator light bar in the header was missing; that the center con-

sole was missing; that the seat cushions were torn; that the heater control panel in the bank was disconnected; that the original 36″ mattress had been replaced by a 30″ mattress in the sleeping area; that the floor upon which the mattress rests was missing; that dash switches and lights on the interior of the cab were missing; that there was a hole in the top of the sleeper; that the grab bars had been removed; that the left hand rear brake had no shoes; that the air and light lines were missing; that the air lines were not hooked up to the suspension; and that, according to the testimony of Mr. Reavis, he was not aware of some of these defects at the time he returned the truck and trailer to the premises of Ozark Kenworth, where the plaintiff had directed that it be returned in compliance with the court's order of October 21, 1987.

### Conclusions of Law

■ It is fundamental that the burden of proving each and every element of the ground for denial of discharge or that of nondischargeability is upon the plaintiff. Bankruptcy Rule 4005; *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *Matter of Abernathy*, 38 B.R. 768, 769 (Bkrtcy.W.D. Mo.1983), affirmed, 38 B.R. 769 (W.D.Mo. 1984). It must also be observed that "(t)he provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor." 4 Collier on Bankruptcy para. 727.-01A, p. 727–9 (15th ed. 1988). This principle is also applicable regarding the dischargeability of individual debts. See *Hunter, supra*, at 1579, and *Abernathy, supra*, at 769. With respect to the plaintiff's allegation that the debtors have violated section 727(a)(2) of the Bankruptcy Code, in that they:

"with intent to hinder delay, or defraud a creditor ... transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the date of the filing of the petition,"

it is incumbent upon the plaintiff to prove a fraudulent intent on the part of the debtors. And from the evidence which has been presented, this court is unable to

make a finding of actual, subjective fraudulent intention on the part of the debtors. "Actual, subjective intention to defraud must be demonstrated as a prerequisite to such a denial of discharge." *Matter of Berry*, 37 B.R. 44, 46 (Bkrtcy.W.D.Mo. 1983). Mr. Reavis has testified to an absence of any intent to hinder, delay or defraud the creditor. There is nothing in the record before the court, nor was there anything in the appearance and demeanor of Mr. Reavis to cause the court to deny credibility to his uncontradicted testimonial statement in this regard. Further, as observed above in the court's findings of fact, any evidence that the major parts which were substituted during debtors' possession of the truck were lower in value than the parts that they replaced was missing. It may be the rejoinder of the plaintiff that the graphic evidence presented, including photographs of the truck and trailer returned (or, more correctly, portions of the truck and trailer), must compel the court to conclude that the truck was returned in substantially worse condition than that in which it was given over to the debtors in the first place. But, in order to compel the court to conclude that this indefinite evidence constituted sufficient evidence of "mutilation" within the meaning of the foregoing statute, there must be some basis of comparison of the condition of the truck when it was returned with the condition of the same truck when it was given by plaintiff over to the possession of the debtors. And there is none in the evidence, particularly of the extreme forms of deterioration which could be correctly labeled "mutilation." This is especially so when the debtors had possession of the truck for a period of some four years, during which it was the acknowledged purpose of the parties that the debtors operate the truck almost constantly in long distance driving. Consequently, some substantial depreciation of the value of the truck over this period of time could be expected. And, as observed above, the evidence simply does not demonstrate, either by a demonstration of the approximate monetary amount of depreciation or otherwise, that drastically more depreciation was effected than could have been expected from ordinary wear and tear when the vehicle was used according to the mutual understanding of the parties. Accordingly, this court concludes that so much of the objection to discharge which sounds under section 727(a)(2) of the Bankruptcy Code must be denied.

■ The plaintiff's second ground for denial of discharge—failure to explain satisfactorily any loss or deficiency of assets to meet the debtors' liabilities within the meaning of section 727(a)(5) of the Bankruptcy Code—appears to be based upon the same evidence. Accordingly, it must fail because of the absence of any showing, as observed above, that there was any loss or deficiency of assets beyond normal wear and tear.

■ The plaintiff's third ground for denial of discharge is that the debtors refused to obey a lawful order of the court. Section 727(a)(6) of the Bankruptcy Code. Once the creditor has shown that there has been a violation of a lawful order of the court by the debtors, the burden of production of evidence then shifts to debtors to show that there has been no commission of an objectionable act. "The original burden is on the objecting creditor to show that there has been a violation of a lawful order of the court ... The burden then shifts to the debtor of proving that he has not committed the objectionable act." 4 Collier on Bankruptcy para. 727.09(2), p. 727–77, n. 2 (15th ed. 1988). The evidence in this action shows that the debtors did not obey the court's order of October 21, 1987, until nearly two months later, December 19, 1987. But it was the uncontradicted testimony of Mr. Reavis that he was on the road nearly all the intervening time. Under these circumstances, the failure of the debtors to comply with the order does not have the character of an intentional or wilful refusal. Accordingly, the objection under section 727(a)(6) of the Bankruptcy Code must also be denied.

■ Plaintiff also contends that the same facts entitle it to a decree of nondischargeability with respect to the value of any of its property which was mutilated or wasted. See section 523(a)(6) of the Bank-

ruptcy Code, which declares nondischargeable a "debt for willful and malicious injury by the debtor to another entity or to the property of another entity." But, as observed above, the evidence which has been adduced to the court does not show the existence of any cognizable injury to property, nothing beyond the ordinary wear and tear which could have been expected with respect to a vehicle which the parties contemplated should be engaged in long-distance hauling over a four-year period. Nor does any evidence of intentional, wilful and malicious acts on the part of the debtors, or either of them, come close to establishing the subjective intention required by *In re Long*, 774 F.2d 875, 880 (8th Cir.1985), and *Matter of McCune*, 85 B.R. 834, 837 (W.D. Mo.1988) ("The most pertinent phrase in *Long* in this regard is that willfulness is normally tested by whether the action violating the rights of another is 'headstrong and knowing.' "). These extraordinarily high standards are not met in the evidence which has been adduced in the action at bar.[6] Rather, it is Mr. Reavis' denial of any intentional malefaction which must govern the result on this issue.[7] Consequently, the contention that any indebtedness is nondischargeable under the provisions of section 523(a)(6) must be denied.

Accordingly, for the reasons set out above, it is hereby

ORDERED, ADJUDGED AND DECREED that plaintiff's complaint objecting to the discharges in bankruptcy of the debtors be, and it is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that debtors' indebtedness to plaintiff be, and it is hereby, declared to be dischargeable in bankruptcy. And it is further

ORDERED that each party bear its own costs and fees incurred in connection herewith.

## ON "MOTION TO ALTER OR AMEND JUDGMENT"

Formerly, on July 21, 1988, this court issued its final judgment denying the plaintiff's objection to discharge. It was the conclusion of this court, generally, that the plaintiff had failed to demonstrate that the depreciation in value of the truck was not due to normal wear and tear over the four-year period during which the debtors possessed the truck and used it for its intended purpose, long-distance hauling. In rendering its conclusions of law in this regard, this court stated as follows:

"[I]n order to compel the court to conclude that this indefinite evidence constituted sufficient evidence of 'mutilation' within the meaning of (section 727(a)(2) of the Bankruptcy Code), there must be some basis of comparison of the condition of the truck when it was returned with the condition of the same truck when it was given by plaintiff over to the possession of the debtors. And there is none in the evidence, particularly of the extreme forms of deterioration which could correctly be labeled 'mutilation.' This is especially so when the debtors had possession of the truck for a period of some four years, during which it was the acknowledged purpose of the parties that the debtors operate the truck almost

---

6. In *Matter of McCune*, 85 B.R. 834, 837 (W.D. Mo.1988), it is said that "While that term (malice) ... is strikingly subjective, the trier of facts is not confined to a debtor's self-justifying testimony but may consider whether the testimony is credible" and that "(t)he credibility of a disclaimer of such intent need not be decided in an evidentiary vacuum." Even if the trier of fact determines that the debtor's denial of any intent to harm is incredible, however, that cannot suffice as affirmative evidence of a subjective intention. Thus, the following observation made by the United States Court of Appeals for the Fourth Circuit in *St. Paul Fire and Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1009, 1010 (4th Cir.1985), still seems to be apt: "To require specific malice or some other strict standard of malice for nondischargeability of a debt under the Bankruptcy Code would undermine the purposes of that provision and place 'a nearly impossible burden' on a creditor who wishes to show that a debtor intended to do him harm ... To require such specific malice would restrict section 523(a)(6) to the small set of cases where the debtor was foolhardy enough to make some plainly malevolent utterance expressing his intent to injure his creditor."

7. See note 6, *supra*.

constantly in long distance driving. Consequently, some substantial depreciation of the value of the truck over this period of time could be expected. And, as observed above, the evidence does not demonstrate, either by a demonstration of the approximate monetary amount of depreciation or otherwise, that *drastically more depreciation was effected than could have been expected from ordinary wear and tear when the vehicle was used according to the mutual understanding of the parties.* Accordingly, this court concludes that so much of the objection to discharge which sounds under section 727(a)(2) of the Bankruptcy Code must be denied." (Emphasis added.)

Plaintiff now moves to alter or amend the judgment of this court, stating that it had presented evidence of the value of the truck, as it should be currently if there had been normal wear and tear, as opposed to deliberate and intentional, in certain deposition testimony which was presented to the court at the onset of the hearing hereof without further elaboration.

The deposition testimony which is now adverted to by the claimant is that of Rick E. Reichert, the used truck manager of Ozark Kenworth, which was taken on January 26, 1988. As pertinent, Mr. Reichert stated that he was experienced in conducting appraisals of such vehicles as is the subject of this litigation; that he first saw the vehicle in this case when the debtor brought it in for inspection in December 1987; that the vehicle then had the changes and alterations on it which have been adverted to in the court's prior findings of fact and conclusions of law; that "the value of this truck in its current condition" is "Fourteen Thousand dollars" (tr. 46); that "if this truck were in the condition of simply declining in value due to normal wear and tear and depreciation," "the truck would be approximately worth about $42,000" (tr. 48, 49); that, if there had been

"normal depreciation," the "retail value of the truck" would be "between forty-eight to fifty thousand dollars" (tr. 52); and that the original retail value of the truck was $52,500 (tr. 52).

This court remains somewhat continually astonished that, on many occasions, such deposition testimony is submitted to the court by apparent agreement of the parties without any demonstration of the unavailability of the deponent, which is required by Rule 804(b)(1) of the Federal Rules of Evidence as a prerequisite to admissibility and, in the absence of which, the court is entitled to disregard the deposition testimony. "The unavailability requirement of Rule 804 places the burden of producing an unavailable declarant upon the proponent of the evidence." *United States v. Pelton*, 578 F.2d 701, 709 (8th Cir.1978). "The question [of] whether a witness is 'unavailable' ... is a ... predicate for the admissibility of the recorded testimony of that witness under Fed.Ev. Rule 804(b)(1)." *United States v. Faison*, 564 F.Supp. 514, 518, n. 7 (D.NJ.1983), affirmed, 725 F.2d 667 (3rd Cir.1983). Accordingly, because the predicate for admissibility had not been shown, this court was justified in disregarding the deposition testimony in making its findings in the judgment which is now being challenged.

Even if somehow, moreover, the court were required to regard the deposition testimony admissible, it would be justified in disregarding its substance on grounds of credibility.[1] The witness was employed by an entity which, in the case at bar, acted as an agent for the plaintiff. His testimony, further, was rendered extemporaneously and without reference to any standard treatises or commercial compilations which might ordinarily be expected to contain the objective and reliable information concerning average rates and magnitudes of depre-

---

**1.** It must be recognized with some universality that it is a task of untold difficulty for a court to determine the credibility of a witness from a cold transcript, when the appearance and demeanor of that witness obviously cannot be

taken into account. Parties who are content to submit a witness' testimony solely by means of a deposition must nevertheless be held to assume the risk that the court will made a credibility determination from the transcript itself.

ciation.[2] This is especially important when the deponent's testimony that, over nearly four years of heavy use, the vehicle in question would ordinarily be expected to depreciate only about $2,500, was highly suspect. The court, therefore, on the ground of credibility, was warranted in disregarding the deposition testimony which is now cited and relied upon by the plaintiff. Consequently, no alteration or amendment of the findings of fact, conclusions of law or judgment is necessary, for the applicable authorities hold that it is a sufficient finding of lack of credibility for the trial court to make its findings at variance with the testimony not credited.[3]

The second contention made by the plaintiff in its motion to alter or amend judgment is that the testimony of its witness Lou Warner demonstrates that the major portion of the "deterioration" in the condition of the vehicle took place, not over a four-year period, as the court has found, but rather in the six-month period between June 3, 1987, and December 23, 1987. Plaintiff's counsel also reminds the court that Mr. Warner's testimony was supported by photographs which tend to show that the truck was in relatively good condition in which it was finally relinquished to plaintiff's agent on December 23, 1987. Again, however, Mr. Warner's testimony was undermined by the absence of a unifying summary which compared the value of the truck on June 3, 1987, with its value on December 23, 1987. Otherwise, the photographs submitted in illustration of his testimony are photographs of portions and aspects of the truck which do not permit direct comparison of the overall condition of the truck on June 3, 1987, with its condition on December 23, 1987. The court was justified in declining to show the inference from such evidence which the plaintiff now requests to be shown. It is therefore, accordingly, hereby

ORDERED that plaintiff's motion to alter or amend judgment be, and it is hereby, denied.

---

**2.** Such commercial publications may independently have been admissible in evidence under the provisions of Rule 803(17) of the Federal Rules of Evidence. And Mr. Reichert otherwise could have based his opinion in part upon such standard references. See Rule 703 of the Federal Rules of Evidence to the following effect:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

**3.** See, e.g., *Matter of Richardson,* 85 B.R. 1008, 1016, n. 16 (Bkrtcy.W.D.Mo.1988), to the following effect:

"Consequently when, without any express finding of credibility, the court bases its findings on the testimony of a witness or witnesses whose testimony is contradicted by others, the implied finding of credibility has been honored by the courts. *Westcott v. United States Fidelity and Guaranty Co.,* 158 F.2d 20, 23 (4th Cir.1946) ('Obviously, the trial judge believed these last witnesses just listed and did not believe Westcott and Mann.')"