In the Matter of Brent Michael BARBER and Lisa Michelle Barber, d/b/a Affordable Homes and Brent M. Barber & Associates, Debtors.

COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Pennsylvania Corporation, Plaintiff,

v.

Brent Michael BARBER and Lisa Michelle Barber, d/b/a Affordable Homes and Brent M. Barber & Associates, Defendants.

Bankruptcy No. 88–02026–W–7–DJS.
Adv. No. 88–0580–3.

United States Bankruptcy Court,
W.D. Missouri, W.D.

Dec. 21, 1988.

Scott E. Wasserman, John C. Hickey, Brown, Koralchik & Fingersh, Overland Park, Kan., for plaintiff.

Steven C. Effertz, Burmeister, Schaffer, McIntosh, et al., Independence, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL DECREE DECLARING THE INDEBTEDNESS OF THE DEFENDANTS TO PLAINTIFF IN SUMS TO BE DETERMINED IN MECHANICS' AND MATERIALMENS' LIENS ACTIONS TO BE NONDISCHARGEABLE IN BANKRUPTCY AND FINAL JUDGMENT THAT PLAINTIFF HAVE AND RECOVER THE SAME SUM FROM THE DEFENDANT

DENNIS J. STEWART, Chief Judge.

The plaintiff in this action sues for a decree of nondischargeability of the defendants' indebtedness to it on account of plaintiff's having to pay, as the defendants' title insurer[1], certain debts allegedly in-

---

1. The insurance policy issued by plaintiff to defendants materially provided as follows:
   "This policy does not insure against loss or damage by reason of the following:
   "1. Rights or claims of parties other than Insured in actual possession of any or all of the property.
   "2. Unrecorded easements, discrepancies or conflicts in boundary lines, shortage in area and encroachments which an accurate and complete survey would disclose.

"3. Unfiled mechanics' or materialmen's liens.
"4. The lien of the General and Special Taxes and and Special Assessments for the year 1987 and thereafter.
"A. The lien of City Taxes for the year 1988 and thereafter.
"B. Liability is limited to General or Special Taxes certified to the Office of the City/County Treasurer and entered on the tax rolls thereof prior to the date hereof.

curred by the defendants in performing according to a construction contract. The action came on before the bankruptcy court for hearing initially on October 6, 1988. At that time, the plaintiff principally relied upon a written stipulation of facts which had been executed by respective counsel for the parties and which, as material, contained the statements that, on October 9, 1987, the defendant Brent Michael Barber signed an affidavit supporting his application to the plaintiff for title insurance on a certain construction contract to the principal effect that there were no outstanding debts or mechanics' or materialmens' liens against the subject project or property [2]; that, in truth and fact, there was, on October 9, 1987, a considerable amount of indebtedness outstanding and owed by defendants on the project as of October 9, 1987, as well as mechanics' and materialmens' liens [3]; that the defendant Brent Michael Barber in fact knew of such indebtedness and liens when he executed the affidavit on October 9, 1987 [4]; that, further, the terms of the affidavit were such that it gave defendant Brent Michael Barber explicit notice that the application for the title insurance was to be tendered to the plaintiff on October 15, 1987, and that he had a continuing duty, at least until that time, of advising the plaintiff of any changes in the facts reported by the affidavit [5]; and that substantial additional indebtedness was in-

---

"5. Easement granted to Kansas City Power and Light Company by instrument filed March 4, 1947, recorded in Book 404, at Page 497.
"6. Right of Way conveyance granted to the County of Clay, State of Missouri, for County Highway purposes, filed May 31, 1960, recorded in Book 683, at Page 179 and corrected by instrument filed November 4, 1960, recorded in Book 699 at Page 206.
"7. Encroachment of drive over Kansas City Power and Light Company Easement on West property line of premises in question as shown on survey by Renner and Associates dated October 14, 1987 as Job No. 10–208. "ITEMS 1 & 3 ABOVE ARE HEREBY DELETED.
"8. Subject to terms and conditions of Deed of Trust executed by Larry R. Sapp and Sharon L. Sapp, his wife, to Michael J. Gorman, Trustee for United Postal Savings Association, dated October 15, 1987, filed October 16, 1987 as Instrument no. F89412 recorded in Book 1801, Page 954, showing an original principal amount of $65,000.00 on premises in question."

**2.** See "Stipulation of Fact" dated October 4, 1988, to the following effect: "Defendants' signatures on Deposition Exhibit P–1 (the 'Affidavit') to the above referenced transcript are the genuine signatures of Defendants." Also see "Affidavit & Agreement" filed as Exhibit C and attached to complaint herein to the following effect:
"On October 9, 1987, before me personally appeared Brent M. Barber and Lisa M. Barber, HUSBAND AND WIFE owners of property, and Brent M. Barber, General Contractor, to me personally known, who being duly sworn on their oaths, did say that all of the persons, firms and corporations, including the General Contractor and all sub-contractors, who have furnished services, labor, or materials, according to plans and specifications, or

extra items, used in the construction or repair of buildings and improvements on the real estate hereinafter described, have been paid in full and that such work was fully completed on or before October 15, 1987, and accepted by the owners, free and clear of any mechanic's lien whatever, all such liens or claims for lien being hereby expressly waived."
"Affiants further say that no unsatisfied claims for lien or payment have been made to either of the affiants by, nor is any suit now pending on behalf of, any contractor, sub-contractor, laborer, or materialman, and further that no chattel mortgages, conditional sale contracts, security agreements, financing statements, retention of title agreements, or personal property leases have been given or are now outstanding as to any materials, fixtures, appliances, furnishings, or equipment placed upon or installed in or upon the aforesaid premises or the improvement thereon, and all plumbing, heating, lighting, refrigerating, and other equipment is fully paid for, including all bills for the repair thereof, except as follows: none."

**3.** See "Stipulation of Fact" dated October 4, 1988, to the following effect:
"On October 9, 1987, and every date thereafter Defendants knew and have known that Defendants had not paid in full all of the persons, firms and corporations, including all subcontractors, who furnished services, labor, or materials, according to plans and specifications, or extra items, used in the construction or repair of buildings and improvements on the real estate described in the Affidavit. Amounts remain due and owing to some of the previously described sub-contractors as of the date of this stipulation."

**4.** See note 3, *supra.*

**5.** See note 2, *supra.*

curred by the defendants between October 9, 1987, and October 15, 1987, and the defendant Brent Michael Barber knew of the incurring of the additional debts, but did not report the same to the plaintiff[6]; and that plaintiff relied upon the representations thus made by the defendant Brent Michael Barber in undertaking its position as surety on the title insurance.[7]

The stipulation thus filed was, without more, sufficient to sustain a nondischargeability decree. See *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va. 1967), to the effect that the plaintiff's burden of proof consists of five elements:

> "... (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations, and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made."

See also *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975). It requires little, if any, analysis to hold that the above summarized stipulation is sufficient to establish all of these factors.[8]

Nevertheless, in the initial hearing of October 6, 1988, the parties insisted upon adducing additional evidence. In so doing, the defendants presented the testimony of Brent Michael Barber which, in material respects, squarely contradicted the stipulation which had been relied upon by the parties. He testified that, as of October 9, 1987, when he signed the affidavit, he did not know of any outstanding unpaid debts related to the construction project nor any mechanics' or materialmens' liens; that, in fact, he believed that there was none because he had attempted only a few days previously to pay off all existing bills. This testimony so materially contradicted the stipulation which had been filed by the

parties that the court was required to initiate its inquiry into the issue of whether relief from the stipulation should be granted on the ground that there was substantial evidence to the contrary. Further, at the conclusion of the initial hearing of October 6, 1988, counsel for the defendants orally requested relief from the separate and independent ground that he had signed it by mistake or inadvertence in that he did not notice that the date as of which it was stipulated that defendant Brent Michael Barber had knowledge of the existence of debts was October 9, 1987.[9] Accordingly, this court issued its order on October 12, 1988, setting an adjourned hearing on these issues. The following considerations were set out in that order:

> "In the course of the trial of the merits of this action which was held on October 6, 1988, it developed that the defendant Brent Michael Barber testified that, on October 9, 1987, when he executed an "affidavit and agreement' to and with the Commonwealth Land Title Insurance Company to the material effect that there were no unsatisfied claims for lien in existence, he did not know of any such liens or other indebtednesses which were then in existence; that he believed that he had paid all liens and debts only shortly before he executed the affidavit. This critical testimony appeared to be contradicted by a stipulation of facts which had been filed with the court on October 4, 1988, and which was signed by counsel for the debtors and which purported to state that liens and indebtednesses were not only in existence on October 9, 1987, but that the debtors also knew of them.

> "Defendants' counsel, accordingly, at the conclusion of the hearing of October 6, 1988, requested relief from the stipulation, stating that he had not been aware that the stipulation applied to the date of October 9, 1987, as well as October 15, 1987. Relief from the stipulation ap-

---

6. See note 3, *supra*.

7. The affidavit issued by the defendants to plaintiff is admitted in the stipulation filed October 4, 1988, to have been signed by them. It, in turn, expressly provides that: "This affidavit is given to induce Commonwealth Land Title In-

surance Company to issue its title insurance policy or policies."

8. See note 2, *supra*.

9. See note 3, *supra*.

pears also to be requested on the ground that the stipulation is contrary to the evidence. 'Stipulations entered into between parties are to be disregarded only if accepting them would be "manifestly unjust or if the evidence contrary to the stipulation was substantial." ' *Smith v. Blackburn,* 785 F.2d 545, 549 (5th Cir. 1986); *Loftin and Woodard, Inc. v. United States,* 577 F.2d 1206, 1232 (5th Cir.1978). In this regard, the evidence which is directly in point is composed almost entirely of the debtor Brent Michael Barber's denial of any knowledge of unpaid bills or existing liens as of October 9, 1987, when he signed the affidavit and agreement. There is no direct evidence, nor any circumstantial evidence, which with any clarity points to the existence of liens nor to the debtor's knowledge of them on October 9, 1987. But, because the evidence is necessarily incomplete on this issue, because the plaintiff unquestionably believed the necessity for adducing it to have been obviated by the stipulation, an adjourned hearing should be held, both to permit the court to determine whether the evidence contrary to the stipulation was substantial and also on the merits of the issue of whether the debtor misrepresented the facts with knowledge of the true facts.

"Also, '[i]t is generally held that relief may be afforded from a stipulation which has been entered into as the result of inadvertence, improvidence, or excusable neglect, provided that the stipulation has not materially changed to the prejudice of the antagonist and that the one seeking relief has been reasonably diligent in doing so.' 73 Am.Jur.2d *Stipulations* section 14, p. 550 (2d ed. 1974). The parties will also be permitted, if they wish, to adduce evidence in the forthcoming adjourned hearing on the issue of whether the stipulation was entered into by the debtors' counsel by reason of in-

advertence, improvidence, or excusable neglect, or by reason of fraud or mistake. *Id.*"

In consequence of the issuance of that order, two adjourned hearings were held, on the dates of October 19, 1988, and November 14, 1988, in which the defendant Brent Michael Barber continued to assert that he was ignorant of the existence of any unpaid debts or mechanics' or materialmens' liens on October 9, 1987. This was so despite the fact that plaintiff adduced cumulative evidence of the existence of several unpaid debts and mechanics' and materialmens' liens on that date. Defendant's knowledge of the existence of such unpaid debts and liens, however, on October 9, 1987, could not be established by any direct evidence. The closest which the plaintiff was able to come to such direct evidence was testimony of one witness to the effect that defendant Brent Michael Barber's superintendent was on the premises when certain pre-October 9, 1987, work was performed. The inference as to the knowledge of the defendant Brent Michael Barber which plaintiff asks this court to draw is one which borders on being impermissibly remote.[10] The defendant Brent Michael Barber admits, however, that he knew, as of October 9, 1987, that he would incur debts and liens in the future between October 9, 1987, and October 15, 1987, when his application would be presented to the plaintiff. And the evidence is otherwise sufficient to justify a finding that Brent Michael Barber knew of his continuing duty, under the clear and explicit terms of the agreement with plaintiff, to report the incurring of those debts as they were incurred.[11]

### *Conclusions of Law*

■ Stipulations are favored in the law and the granting of relief from stipulations is accordingly the exception rather than the

---

10. It is plaintiff's contention that the superintendent's knowledge was likely transmitted to Brent Michael Barber. But there is no actual evidence to this effect: "[A]n inference is not reasonable if it is 'only a guess or a possibility.'" *Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1324 (11th Cir.1983).

11. The affidavit executed by the debtors state that their work is to be completed by October 15, 1987, "free and clear of any mechanic's lien whatever ..."

rule.[12] "Substantial evidence" contrary to the provisions of a stipulation must necessarily mean credible evidence.[13] And this court does not find the testimony of Brent Michael Barber in contradiction of the stipulation to be credible. This conclusion is justified, not only by the appearance and demeanor of the witness,[14] but also by reason of his admission that he knew that he would be incurring debts in the very near future—debts which he knew that he was contractually bound to report to the plaintiff but did not do so. This seems to this court to be consistent with the defendant's intention to keep from the plaintiff any facts which might prevent the issuance of the title insurance policy.[15] Accordingly,

the court concludes that there is not substantial evidence which is credible to justify relief from the stipulation. And, as pointed out above, the stipulation is otherwise sufficient to support a decree of nondischargeability.

Nor does the evidence demonstrate that the stipulation should be set aside for mistake or inadvertence of defendants' counsel. Although counsel orally requested relief from the stipulation on this basis, as observed above, at the conclusion of the initial hearing, he adduced no evidence in support of this contention. Although two adjourned hearings were held consequent to the court's announcement that it would conduct those hearings on this issue, *inter*

12. See 73 Am.Jur.2d *Stipulations*, § 13, p. 548 (1974), to the following effect:

"It is generally recognized that it is within the discretion of the court to set aside a stipulation of the parties relating to the conduct of a pending cause, where enforcement would result in injury to one of the parties and the other party would not be materially prejudiced by its being set aside. But, there is some authority that this rule does not apply where the stipulation partakes of the nature of a contract, in which case the court can exercise no discretion in the matter whatever, except perhaps to relieve from fraud clearly shown. And in all cases, the power to relieve from a stipulation should be exercised solely to promote justice."

13. Unless credible, testimony can carry no probative weight as evidence.

14. See *Matter of Richardson*, 85 B.R. 1008, 1016, n. 16 (Bkrtcy.W.D.Mo.1988), to the following effect:

" '[S]o far as the findings of the trial judge who saw the witnesses "depend ... upon conflicting testimony or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable." ' *Wittmayer v. United States*, 118 F.2d 808, 811 (9th Cir.1941). Even in the absence of an explicit finding on the issue of credibility, '[a]n appellate court must give due regard to the trial court's opportunity to judge the credibility of the witnesses.' *Richmond v. Carter*, 616 F.2d 381, 383 (8th Cir.1980). A trial judge's 'impressions of the credibility of the witnesses, given before the passage of time had dimmed the memory of what can never be adequately preserved by stenographic record, is thus entitled to great weight.' *Mazzella Blasting Mat Co. v. Vitiello*, 250 F.2d 935 (2d Cir.1957). Consequently when, without any express finding of credibility, the court bases its findings on the testimony of a

witness or witnesses whose testimony is contradicted by others, the implied finding of credibility has been honored by the courts. *Wescott v. United States Fidelity and Guaranty Co.*, 158 F.2d 20, 23 (4th Cir.1946) ('Obviously, the trial judge believed these last witnesses just listed and did not believe Westcott and Mann.')"

15. See *Matter of Dallam*, 850 F.2d 446, 449 (8th Cir.1988), to the following effect:

"The bankruptcy court erred in concluding Dallam's affidavit did not constitute an actionable false representation under section 523(a). The affidavit makes three statements in the conjunctive: (1) that all of the persons who have furnished services, labor or material used in the construction have been paid in full; (2) that there are no mechanics' or materialmen's liens against said property, and (3) that there are no claims outstanding which would entitle the holder thereof to claim a lien against the property. In construing a contract under Missouri law, 'no substantive clause may be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course.' *Harnden v. Continental Ins. Co.*, 612 S.W.2d 392, 396 (Mo. Ct.App.1981). The bankruptcy court's unabashedly visceral analysis looked only to the second and third of the three elements of the statement."

\* \* \* \* \* \*

"We conclude that Lawyers Title produced evidence establishing fraud and a nondischargeable debt under 11 U.S.C. § 523(a)(2): Dallam obtained payment of her business' debts by knowingly making a false statement in order to induce Lawyers Title to rely on it, and Lawyers Title's reliance on the statement caused it to lose money. The lower courts erred in holding the complaint should be dismissed."

*alia,* defendants' counsel did not testify in either hearing. Rather, he waited until his closing argument; after the evidence had been closed, to mention any facts in this regard and to offer to testify at some indefinite time, "if necessary." The court cannot therefore find that there is any evidence to support the setting aside of the stipulation on this basis.

■ Further, separately and independently, this court concludes that the evidence which has been adduced in the several hearings held in this case, wholly independent of the stipulation, is sufficient to warrant a finding of deliberate fraud. Again, that evidence leaves only defendant's knowledge of unpaid debts and liens as of October 9, 1987, as an issue with respect to which there is some conflict in the evidence.[16] And the fact that the trial court disbelieves the defendant's testimonial protestations of absence of knowledge is insufficient to suffice as affirmative evidence of such knowledge.[17] The court must be mindful, however, that fraud is seldom provable by direct evidence and that the law therefore permits its proof by circumstantial evidence.[18] And when, as observed above, the defendant's superintendent was on the scene and witnessed some work being performed, some likelihood is thereby indicated whereby the superintendent may have communicated these facts to defendant before his execution of the affidavit of October 9, 1987. While this inference is

remote and could not, without more, satisfactorily establish guilty knowledge, there is also the other evidence of failure to comply with the contract's requirements of reporting post-October 9, 1987, debt as it was incurred, and the evincing of an intention thereby to conceal the facts concerning debt and liens from the plaintiff. This constitutes sufficient circumstantial evidence of defendant's knowledge of debts which existed as of October 9, 1987.[19] Finally, nondischargeability, under the facts of this case, can be predicated exclusively on the separate and independent ground of defendant's knowing and deliberate failure to perform his continued duty to notify plaintiff of any debt incurred between October 9, 1987, and October 15, 1987. Such knowing and deliberate conduct constitutes false pretenses under the provisions of § 523(a)(2) of the Bankruptcy Code.[20]

In accordance with the foregoing, it is hereby

ORDERED, ADJUDGED AND DECREED that the indebtedness of defendants Brent Michael Barber and Lisa Michelle Barber[21] to plaintiff for all sums which will have to be paid by plaintiff on account of mechanics' and materialmens' liens in effect as of October 9, 1987, or incurred after October 9, 1987, and before October 15, 1987,[22] be, and it is hereby, declared to be nondischargeable in bankruptcy.

16. As previously mentioned, Mr. Barber denied such knowledge in his testimony, although he had admitted it in the stipulation filed with the court on October 4, 1988.

17. "Even if the trier of fact determines that the debtor's denial of any intent to harm is uncredible, however, that cannot suffice as affirmative evidence of a subjective intention." *Matter of Reavis,* 92 B.R. 380 (Bkrtcy.W.D.Mo.1988).

18. See *Matter of Keenen,* Civil Action No. 82–5038–CV–SW–4 (W.D.Mo. Oct. 1, 1982), to the following effect: "Intent of the bankrupt to hinder, delay and defraud creditors by transfer is a subjective issue which may be inferred from circumstantial evidence since the issue is seldom susceptible to direct proof."

19. The failure to report liens incurred after October 9, 1987, together with the guilty knowledge of existing debts as of October 9, 1987,

which is admitted by defendants in the stipulation, shows with great certainty the existence of an intention to defraud in signing the affidavit on October 9, 1987.

20. "To require an overt misrepresentation when there is clearly no intention to [perform] is an unduly restricted interpretation of the purposes of the Bankruptcy Code." 3 Collier on Bankruptcy ¶ 523.08, pp. 523–51, 523–52 (1988).

21. According to the stipulation filed October 4, 1988, which governs the issues in this case, Lisa Barber shared her husband's guilty knowledge and intentions and also executed the affidavit.

22. The plaintiff requested a determination of nondischargeability in advance of the sums' being established by subsequent mechanics' and materialmens' lien actions.