**In re Julie CAMDEN, Debtor.**

**Ivan YORK, Jr., Plaintiff,**

v.

**Julie A. CAMDEN, Defendant.**

**Bankruptcy No. BK 84–30093. Adv. No. 84–0126.**

United States Bankruptcy Court, S.D. Illinois.

June 8, 1990.

Brent D. Holmes, Mattoon, Ill., for plaintiff York.

Julie A. Camden, pro se.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

There is often a fine line between love and hate. Unfortunately for Ivan York, Jr., Julie Camden crossed that line when she placed a .22 caliber pistol to York's abdomen and pulled the trigger. The issue before the Court is the dischargeability of the debt arising from this incident.

The facts surrounding this proceeding are not in dispute.[1] Ivan York, Jr., (York) and Julie Camden (debtor) had dated and lived together for a period of time prior to July 21, 1983. However, their relationship ended and York began dating another woman. On July 21, 1983, while York was seated in a tavern with friends, the debtor approached York, leaned over his shoulder and told him that she hoped he had "en-

joyed himself." The debtor then shot York in the abdomen with a .22 caliber Derringer pistol.

A criminal charge of armed violence was brought against the debtor in Crawford County, Illinois. During the pendency of the criminal proceedings, the debtor filed for protection under chapter 7 of the Bankruptcy Code. Debtor's Amended Schedule A–3 listed York as an unsecured creditor without priority. Such creditors typically have their debts discharged unless there is a judicial determination of nondischargeability. On May 24, 1984, York filed a complaint to determine the dischargeability of the debt. In his complaint York alleged that the debtor's act of shooting him constituted willful and malicious injury and thus the debt should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[2]

The Bankruptcy Court proceedings in regard to the dischargeability complaint were stayed pending the resolution of the criminal charges. Following a mistrial, numerous appeals, and subsequent retrial in the state court, the criminal prosecution ended with a jury verdict of guilty but mentally ill of armed violence.

Upon conclusion of the criminal prosecution, York filed a Motion for Summary Judgment in the dischargeability action. York supported his motion with an affidavit of the facts surrounding the shooting. Basically, York argues that the liability stemming from the shooting is nondischargeable pursuant to § 523(a)(6). The issue before the Court is whether York is entitled to summary judgment on the issue of dischargeability.

### Guilty But Mentally Ill

As an initial matter the Court feels compelled to address a somewhat novel issue raised by the Crawford County jury verdict. A determination of nondischargeabili-

---

1. In the Crawford County criminal proceedings Julie Camden filed a statement of facts in which she admitted the factual allegations contained in the information filed against her, but denied that she had the requisite *mens rea*. *See People v. Camden*, 115 Ill.2d 369, 105 Ill.Dec. 227, 504 N.E.2d 96 (1987).

2. A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

ty pursuant to § 523(a)(6) requires willful and malicious conduct, which further requires that the debtor's actions be performed with a certain degree of intent. Thus, the Court is faced with the issue of whether the jury verdict of guilty but mentally ill precludes a finding of the requisite intent under § 523(a)(6).

Under Illinois law a person found guilty but mentally ill remains criminally responsible for their conduct, Ill.Rev.Stat. ch. 38, ¶ 6–2(c) (1987), and is subject to any sentence which could be imposed on a defendant who had been convicted of the same offense without a finding of mental illness. Ill.Rev.Stat. ch. 38, ¶ 1005–2–6(a) (1987). *See also People v. Crews*, 122 Ill.2d 266, 119 Ill.Dec. 308, 522 N.E.2d 1167 (1988) *cert. denied* — U.S. —, 109 S.Ct. 3260, 106 L.Ed.2d 605 (1989) (holding that a finding of guilty but mentally ill does not preclude imposition of the death penalty.) Furthermore, "mentally ill" is defined as "a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, *but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law.*" Ill.Rev.Stat. ch. 38, ¶ 6–2(d) (1987) (emphasis added). This statute illustrates "that a person can be 'mentally ill' and not yet legally insane, the distinction being that a person who is only mentally ill is held responsible for his acts." *People v. Grice*, 121 Ill.App.3d 567, 77 Ill.Dec. 26, 27, 459 N.E.2d 1122, 1123 (3rd Dist.1984). Since a person found to be guilty but mentally ill could have conformed his conduct to the law, the debtor's conviction of guilty but mentally ill will not affect this Court's determination of any intent requirement under § 523(a)(6).

Dischargeability Pursuant to § 523(a)(6)

Summary judgment is proper only where there is no genuine issue as to any material fact and the record discloses that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).[3] Either party may move for summary judgment with or without supporting affidavits. Fed.R.Civ.P. 56(a). When a supporting or opposing affidavit is used, the affidavit shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show the affiant is competent to testify to the matters stated in the affidavit. Fed.R.Civ.P. 56(e). The requirement of personal knowledge is mandatory. *Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 162 (7th Cir.1987).

York supported his motion for summary judgment with an affidavit. The debtor neither responded to the motion for summary judgment nor filed an opposing affidavit. Rule 56(e) provides that when a motion for summary judgment is made and supported, an adverse party may not rest upon the mere allegations or denials in his or her pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

In order for a debt to be declared nondischargeable pursuant to § 523(a)(6), five elements must be established by a preponderance of the evidence. The five elements are (1) a willful, and (2) malicious, (3) injury, (4) by the debtor, (5) to another entity[4] or to the property of another entity. Elements three through five are not at issue, and therefore only the first two elements will be addressed. The elements of willfulness and maliciousness must be analyzed separately, and both must be found in order to justify denial of discharge. *In re McCune*, 85 B.R. 834, 837 (Bankr.W.D.Mo. 1988).

The first question to be addressed is whether the debtor's conduct amounted to a willful injury. The word "willful" means deliberate or intentional, a deliberate and intentional act which necessarily leads to injury. 3 Collier on Bankruptcy, ¶ 523.16 at pg. 523–117 (15th ed. 1989). It is uncontroverted that the debtor leaned over and

---

**3.** Bankruptcy Rule 7056 adopts Fed.R.Civ.P. 56 to apply in adversary proceedings. Thus, Federal Rule 56 is applicable in the present proceeding.

**4.** "Entity" includes a person, estate, trust, governmental unit, and United States trustee. 11 U.S.C. § 101(14).

whispered in York's ear that she hoped he had enjoyed himself, and then shot him.[5] Furthermore, an Illinois jury found the debtor guilty of the crime of armed violence. Based upon the uncontroverted facts before this Court and the state court conviction, the Court finds that the debtor shot and injured York and that the conduct was willful.

Next, the Court must determine if the debtor's conduct was malicious. There is a split of authority as to what constitutes malicious conduct. "As a result, there are two conflicting lines of reasoning regarding the finding of malice." Fischer, *The Exception to Discharge For Willful and Malicious Injury: The Proper Standard for Malice*, Vol. 7, No. 1 Bankruptcy Developments Journal 245, 246 (1990). The first line of authority uses a specific intent standard, which requires a showing that the debtor's motive was to harm the creditor. *Id.; see also In re Akridge*, 89 B.R. 66 (Bankr. 9th Cir.1988). The second line of authority implements an implied or constructive malice standard. Fischer, *supra*, at 246; *see also Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986). The implied malice standard "requires the creditor to demonstrate that the debtor knew, or was substantially certain, that his actions would result in injury to a creditor." Fischer, *supra*, at 246–247.

This Court has previously adopted the implied malice standard in *In re Hobbs*, BK 87–40103 (April 8, 1988). However, even if the Court examined the debtor's conduct under the specific intent standard the outcome would be the same. The debtor's conduct in shooting York was intended to injure him and was malicious under either standard.

5. The affidavit of Ivan York, Jr. contains the following statements:
1. On the evening of July 21, 1983, I was at The Saloon in Robinson, Crawford County, Illinois.
2. I was sitting at a table with Kevin and Mona Pethtel, Kevin's mother, Barbara, and Elder York.
3. I had been sitting at this table talking with these friends for about nine or ten minutes when JULIE A. CAMDEN came over to the table and placed her hand on my shoulder.

IT IS ORDERED that the liability to Ivan York, Jr. is nondischargeable pursuant to § 523(a)(6).

4. The Defendant, JULIE A. CAMDEN then leaned over and whispered in my ear and said, "I hope you have enjoyed yourself."
5. ...
6. After whispering that statement to me, she then shot me with a .22 caliber pistol.
(Affidavit of Ivan York, Jr., Para.'s 1–4, 6, filed March 19, 1990.)
The Court finds that York has personal knowledge of these facts and would be competent to testify to such facts if a trial were conducted.