# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1828

James A. Washington, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided    November 2, 2005   )

*David E. Boelzner*, of Richmond, Virginia, was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Michael J. Burdick*, all of Washington, D.C., were on the brief for the appellee.

Before GREENE, *Chief Judge*, and KASOLD and MOORMAN, *Judges*.

MOORMAN, *Judge*, filed the opinion of the Court.  KASOLD, *Judge*, filed a dissenting opinion.

MOORMAN, *Judge*:  The appellant, James A. Washington, seeks review through counsel of an October 2, 2003, decision of the Board of Veterans' Appeals (Board) that denied his claim for service connection for a bilateral hip disability.  The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).  For the reasons set forth below, the Court will vacate the Board's October 2, 2003, decision and remand the matter for further adjudication consistent with this decision.

## I. FACTS

Mr. Washington served on active duty in the U.S. Army from September 1966 to April 1986. Record (R.) at 16-17.  In the course of adjudicating a separate claim for, inter alia, a back disability, most of Mr. Washington's service medical records (SMRs) were sent to a VA regional office (RO)

on January 18, 1990, but have since been lost. VA's efforts to locate them have been unsuccessful. R. at 27, 125-26, 230, 247-48, 315. The few remaining SMRs, dated in 1984 and 1985, are unrelated to Mr. Washington's bilateral hip disability; they reflect neither an in-service hip injury nor treatment of any such injury. R. at 22-25. In December 1994, Dr. Schwegel, a private radiologist, diagnosed Mr. Washington with "probable bilateral osteonecrosis of the hips, more pronounce[d] on the right than the left." R. at 89; *see also* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1200 (27th ed. 1988) [hereinafter DORLAND'S] (defining "osteonecrosis" generally as cell death of the bone). In January 1995, Dr. Miller, Mr. Washington's private physician, noted that Mr. Washington had complained of hip pain for 26 years; and he ordered magnetic resonance imaging (MRI) of Mr. Washington's hips. R. at 159. In February 1995, Dr. Miller diagnosed Mr. Washington with avascular necrosis of the right hip and "minimal" avascular necrosis of the left hip. R. at 100-01; *see also* DORLAND'S 1101 (defining "avascular necrosis" as "morphological changes indicative of cell death and caused by . . . deficient blood supply").

In March 1995, Mr. Washington submitted a claim for service connection for a bilateral hip disability. *See* R. at 365. In a July 1995 decision, the RO denied that claim and advised him that an award of service connection required evidence linking his current hip disability to his active military service. R. at 111-12. Mr. Washington filed a Notice of Disagreement (NOD) in August 1995; and the RO subsequently issued a Statement of the Case (SOC). R. at 199-203. In July 1996, Mr. Washington filed a Substantive Appeal with the Board, and stated that while he was stationed in Korea, he had been treated for a hip disability. R. at 211-12. Additionally, during a personal hearing at the RO in January 1997, Mr. Washington testified that in the summer of 1969, while he was stationed in Korea, he woke up one morning with his right foot internally rotated and pain in his right hip and thigh; and that he was subsequently placed on limited duty for approximately two months, during which time he underwent physical therapy for the pain. R. at 214-22. He further testified that he received treatment for hip pain during the remainder of his military service, although his few remaining SMRs do not reflect any such treatment. R. at 22-25, 214-22.

Following Mr. Washington's testimony in January 1997, the RO issued a Supplemental Statement of the Case (SSOC) maintaining its denial of his claim for service connection for a bilateral hip disability. R. at 225-28. The RO also notified Mr. Washington in the SSOC that copies

of his SMRs had been requested from the National Personnel Records Center (NPRC) in St. Louis, Missouri, but no copies could be located. R. at 227. The record reflects that the RO requested Mr. Washington's records from NPRC in August 1995, November 1996, and August 2001. R. at 125-26, 230, 315. The NPRC repeatedly advised that all of Mr. Washington's available SMRs were sent to the RO on January 18, 1990, and no additional records could be located. *Id*. In December 1998, the RO sent Mr. Washington a letter informing him that it sent "several" requests to the NPRC for his SMRs, but it had not received any additional records. R. at 247. The RO enclosed a military records specialist's "administrative decision" that concluded that all necessary requests and actions had been taken to locate Mr. Washington's records, but they had been unsuccessful. R. at 248. The decision noted that his records, received by the RO in 1990, were later "disassociated from [his claim] file at some unspecified time" and a search of the RO had failed to locate them. *Id*.

In July 1997, Dr. Tabor, a VA physician, examined Mr. Washington. R. at 240-43. Regarding Mr. Washington's hip, Dr. Tabor stated:

> The problem with the hip is that the blood supply to the hip is lost by some incident or situation and over the years, the hip degenerates. This could have happened in the 1969 episode that [the] veteran complains [about] with abnormal position that he could not move his hip. There could be subluxation of that hip at that time and it would be appropriate at this time that the veteran would begin to have severe pain in the right hip from the avascular necrosis. It is essential that his medical records from his service career be found and I would suggest that that be done in order to complete this examination.

R. at 241. In addition, Dr. Tabor explicitly ruled out the possibility that Mr. Washington's hip disability was secondary to his back disability. *Id*. He also raised the possibility that Mr. Washington's hip disability may have been caused by steroid treatment, but noted that Mr. Washington had no reported history of such treatment. *Id*.

In May 2000, the Board found that Mr. Washington had not submitted evidence linking his current hip disability to service or to an established service-connected disability, and it denied his claim. R. at 260-68. On November 22, 2000, the Court granted a joint motion to vacate the May 2000 decision and remand the matter to the Board. R. at 270-79. Thereafter, the Board remanded to the RO Mr. Washington's claim for application of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096. R. 298-301.

In November 2001, the RO ordered another VA medical examination of Mr. Washington's bilateral hip disability. R. at 319. The examiner, Dr. Mueller, reviewed Mr. Washington's claim file and noted:

> There is one brief note of an episode of limping during the service time in 1969, however, there is no way to verify this. X-ray studies and MRIs done in the early and mid-1990's reveal avascular necrosis of the hips and degenerative disease of the lumbosacral spine. In my opinion, there is no evidence to corroborate that the incident of limping in 1969 was in any way related to the avascular necrosis of the hips which surfaced in 1994.

R. at 319. In addition, Dr. Mueller also ruled out the possibility that Mr. Washington's bilateral hip disability was secondary to his back disability. R. at 319.

The matter was returned to the Board in June 2002, and again the Board denied Mr. Washington's claim, after finding "no probative evidence of a disorder of either hip during [Mr. Washington's] service or for a number of years later." R. at 357-58. The Board discounted his testimony of his "purported limping episode during service in 1969" because it found that he was not competent to render an opinion regarding diagnosis or etiology. *Id*. Mr. Washington appealed to the Court. In February 2003, the parties filed a joint motion for remand, stating:

> Contrary to the Board's findings, [Mr. Washington's] reports of what occurred in service . . . *is competent and probative evidence.* Thus, the Board's failure to provide a basis for rejecting [Mr. Washington's] otherwise competent reports of his in-service symptoms, and the Board's rejection of [Mr. Washington's] reports as "not probative" in the absence of any contrary evidence renders its reasons or bases inadequate.

R. at 368-69 (citations omitted) (emphasis added). The parties also acknowledged that because Mr. Washington's SMRs were missing, the Board had a heightened obligation to provide an adequate statement of the reasons or bases for its decision. R. at 369. Later that month, pursuant to the parties' joint motion, the Court remanded the matter to the Board. R. at 362-73.

On October 2, 2003, the Board issued the decision here on appeal. R. at 1-12. The Board found that Mr. Washington's "mere allegation" of an in-service hip injury was insufficient to show that such an incident had occurred. R. at 11. Rather, the Board determined that there must be some "credible independent evidence sufficient to corroborate the allegation." *Id*. The Board concluded, therefore, that the weight of the credible evidence of record established that Mr. Washington's bilateral hip disability was not caused by an in-service injury. R. at 12.

4

Here on appeal, Mr. Washington argues that the Board's statement of the reasons or bases for its decision is inadequate. Appellant's Brief (App. Br.) at 5. Specifically, he alleges that the Board failed to comply with the Court's February 2003 remand order when it rejected his statements of his in-service symptoms as not probative. App. Br. at 6. He argues that the Board's decision should be reversed for its failure to accept his testimony. App. Br. at 15. Mr. Washington next asserts that the Board, if correct in rejecting his evidence for lack of corroboration, violated 38 U.S.C. § 5103(a) by failing to notify him of the corroborative evidence not of record needed to substantiate his claim, and that because the Board's decision turned on the lack of such evidence, it cannot be harmless error for VA to have failed to so notify him. App. Br. at 13-14; Appellant's Reply Brief (Reply Br.) at 10. The Secretary argues that the Court should affirm the Board's decision because it was not clearly erroneous. Secretary's Brief (Sec'y Br.) at 8-9. He contends that the Board acted within the confines of its adjudicatory authority and according to the directives of the Court's February 2003 remand. Sec'y Br. at 9-12. The Secretary also argues that Mr. Washington was provided VCAA-compliant notice; or, alternatively, if the Court finds a notice error, it should also find that any such error was not prejudicial. Sec'y Br. at 13-17.

## II. ANALYSIS

The Board's determination of service connection is a question of fact that the Court reviews under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Johnston v. Brown*, 10 Vet.App. 80, 84 (1997); *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). The Court must set aside a finding of material fact as clearly erroneous when the Court, after reviewing the entire evidence of record, "is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Gilbert*, 1 Vet.App. at 52. The Court may reach this conclusion only if there is no "plausible basis" in the record, viewed in its entirety, for the Board's findings. *Gilbert*, 1 Vet.App. at 52-53. The Court may not substitute its judgment for the factual determinations of the Board on issues of material fact merely because the Court would have decided those issues differently in the first instance. *Id.* at 52; *see Mariano v. Principi*, 17 Vet.App. 305, 313 (2003).

5

Before deciding a claim, the Board is required to consider all relevant evidence of record and to consider and discuss in its decision all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order). In addition, the Board must include in its decision a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board's decision as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) *aff'd*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gilbert*, 1 Vet.App. at 57.

In order to establish a claim for service connection, the appellant must show (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service; and (3) medical evidence of a nexus between the claimed in-service injury or disease and the current disability. *See Caluza*, 7 Vet.App. at 506; *see also Hickson v. West*, 12 Vet.App. 247, 252 (1999). Here, the appellant has produced medical evidence of a current diagnosis of avascular necrosis of his right hip and has therefore produced sufficient evidence to satisfy the first *Caluza* element. *See Caluza*, 7 Vet.App. at 506; R. at 100, 241, 319. With regard to the second element, the appellant has provided his own lay testimony asserting that while on active duty in Korea in the summer of 1969, he woke up one morning with his right foot internally rotated and pain in his right hip and thigh. R. at 214-22. He testified that he was subsequently placed on limited duty for about two months, during which he underwent physical therapy for the pain. *Id.* The Board, however, rejected the appellant's uncorroborated testimony and found that it was not evidence sufficient to prove the in-service incurrence of a disease or injury. R. at 11. The appellant, in the Board's view, has therefore not satisfied the second *Caluza* element for establishing entitlement to service connection. *See Caluza*, 7 Vet.App. at 506. The appellant has also submitted an opinion from Dr. Tabor maintaining that if he had, in fact, experienced an in-service hip injury in the manner that he described, "it would be appropriate at this time that [he]

6

would begin to have severe pain in the right hip from avascular necrosis." R. at 241. That medical opinion supports the nexus element of *Caluza*, *supra*, however the nexus requirement cannot be satisfied fully without some credible evidence of an in-service incurrence. Although, as the dissent notes, Dr. Tabor considered and rejected two alternative explanations for the appellant's current hip disability, Dr. Tabor did not eliminate all possibilities. In the absence of proof of an in-service incurrence, his opinion therefore amounts to nothing more than medical speculation.

### A. Evidence of In-Service Incurrence

In the parties' February 2003 joint motion for remand, the Secretary agreed:

> Contrary to the Board's findings, the veteran's reports of what occurred in service – that he had hip pain and a limp, went to sick call, and was treated with physical therapy [–] is competent and probative evidence. Thus, the Board's failure to provide a basis for rejecting the veteran's otherwise competent reports of his in-service symptoms, and the Board's rejection of the veteran's reports as "not probative" in the absence of any contrary evidence renders its reasons or bases inadequate.

R. at 369 (citations omitted). The Court vacated the Board's June 2002 decision pursuant to that joint motion for remand; therefore, the Board must accept the appellant's testimony as competent and probative evidence of the in-service occurrence he described and must then assess the credibility of, and weight to be given to, his testimony. *See Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991) ("The [Board] has the duty to assess the credibility and weight to be given to the evidence."); *see also Ashmore v. Derwinski*, 1 Vet.App. 580, 582 (1991).

We respectfully disagree with the dissent's assertion that in order to be probative, testimony in this instance has to have been found credible. Rather, the appellant's credibility affects the weight to be given to his testimony, and it is the Board's responsibility to determine the appropriate weight. *See Layno v. Brown*, 6 Vet.App. 465, 469 (1994) (finding that the weight and credibility of evidence "is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"); *see also United States v. Welsh*, 774 F.2d 670, 672 (4th Cir. 1985) ("For evidence to be admissible . . . it must be more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts. The probative value of evidence is its 'tendency . . . to establish the proposition that it is offered to prove.' Evidence has probative value if it tends to prove the issue in dispute. Credibility on the other hand goes to 'the quality or power of inspiring belief.' . . . [A]s a general rule, the credibility of a witness has nothing

to do with whether or not his testimony is probative with respect to the fact which it seeks to prove." (citations omitted)); *United States v. Wiley*, 36 M.J. 825, 829-30 (1993) (same).

In its October 2003 decision, the Board found "no probative evidence of a disorder of either hip during the [appellant's] service or for a number of years later." R. at 11. Regarding the appellant's testimony, the Board concluded, "the [appellant's] mere allegation of a hip problem in service is insufficient to show such occurred. Rather, there must be some credible independent evidence sufficient to corroborate the allegation." *Id.* However, the Board did not adequately explain the basis for its rejection of the appellant's testimony. Rather, it disregarded the appellant's testimony without assessing its credibility concerning his symptoms or articulating an adequate basis for failing to assess his credibility. The Board based its rejection of the appellant's testimony on the Court's decision in *Espiritu v. Derwinski*, 2 Vet.App. 492 (1992). In *Espiritu*, the Court found that a lay person was not competent to render an opinion regarding the diagnosis or etiology of a disease or injury. *Espiritu*, 2 Vet.App. at 494.

Although the Board's determination that Mr. Washington was incompetent to render a medical diagnosis is an accurate statement of the law, the Board mischaracterized the purpose for which the appellant's testimony was introduced. *See id.* The appellant neither testified about the diagnosis nor the etiology of his current hip disability. Rather, he was testifying to factual matters of which he had first-hand knowledge: Experiencing pain in his right hip and thigh in service, reporting to sick call, being placed on limited duty, and undergoing physical therapy. The appellant is competent to provide such testimony. *See Layno*, 6 Vet.App. at 469-71 (holding that lay testimony is competent if it is limited to matters that the witness has actually observed and is within the realm of the witness's personal knowledge); *Espiritu*, 2 Vet.App. at 494 (holding that a lay witness can provide an "eye-witness" account of the appellant's visible symptoms, but cannot offer evidence that requires medical knowledge, such as causation or etiology of a disease or injury).

When the Board found no probative evidence that the appellant experienced an in-service hip injury, it also failed to discuss potentially corroborating evidence in the record on appeal. Dr. Tabor's statement that the appellant's current hip pain is an "appropriate" symptom of having experienced the in-service hip injury to which the appellant testified is evidence that may be used to corroborate the appellant's testimony. *See ZN v. Brown*, 6 Vet.App. 183, 194 (1994) (remanding

the appellant's claim to the Board when it failed to address three physicians' statements, made several years after service, that the extent of the appellant's current disability was indicative of a long-standing infection and in-service exposure to disease); *see also Moreau v. Brown*, 9 Vet.App. 389, 396 (1996) (indicating that the Court's caselaw allows a physician's opinion of causal nexus, in certain circumstances, to establish in-service incurrence of a disease or injury, while rejecting such use in PTSD cases). Unlike the dissent, however, we are unwilling to make the initial judgment concerning the weight to be given to this statement. Because the Board must in the first instance assess the credibility and probative value of evidence, we will avoid expressing an opinion on the appropriate corroborative weight the Board should have given to Dr. Tabor's opinion. *See Elkins v. Gober*, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("Fact-finding in veterans cases is to be done by the expert [Board], not by the Veterans Court."). As discussed *supra*, that is a determination to be made by the Board, and the Board erred when it failed to consider and discuss it. *See Schafrath*, 1 Vet.App. at 593; *Ashmore*, 1 Vet.App. at 582; *Wood*, 1 Vet.App. at 193; *see also Weaver*, 14 Vet.App. at 302.

The Board also failed to discuss the facts in the record that reveal that the appellant first notified VA of his in-service hip injury in his August 1995 NOD and his July 1996 Substantive Appeal to the Board; and he testified as to the details of the occurrence of such injury during his January 1997 hearing. R. at 211-12, 214-17. It was not until January 1997, however, in an SSOC issued following the appellant's hearing testimony, that the RO first put the appellant on notice that the appellant's SMRs could not be located. R. at 227. Then, in October 1998, the RO informed him that all actions had been taken to locate his SMRs "without success." R. at 247-48. Therefore, when the appellant testified concerning his in-service hip injury, he was unaware that his SMRs were missing, and he no doubt reasonably believed that his testimony could be substantiated by information available in his SMRs. There is no indication in the Board's decision, however, that it evaluated and discussed either this sequence of events or the effect, if any, of Dr. Tabor's medical opinion that the appellant's current disability is an "appropriate" result of the in-service hip injury that he described. This is evidence that may be favorable to the appellant and that should have been discussed. The Board erred in failing to adequately consider and discuss it. *See Schafrath*, 1 Vet.App. at 593; *see also Weaver*, 14 Vet.App. at 302.

9

B. Duty to Assist

The Board found that VA had fully complied with its duty to assist the appellant pursuant to 38 U.S.C. § 5103A. R. at 8. Specifically, the Board determined that further efforts to locate the appellant's SMRs would be "futile;" that VA had obtained all postservice medical records that the appellant had identified; and that it had given the appellant opportunities to submit any additional evidence that would support his claim. R. at 8-9. The Board did not address, however, VA's duty to exercise greater diligence in assisting the appellant with the development of evidence in support of his claim in the event that his medical records were lost while in VA custody. *See Russo v. Brown*, 9 Vet.App. 46, 51 (1996) (holding that the Court's caselaw establishes a "heightened duty" to assist when the appellant's medical records have been lost or destroyed); *Cuevas v. Principi*, 3 Vet.App. 542, 548 (1992) (holding that the Board's duty to assist a claimant in developing his claim is heightened in cases in which the appellant's SMRs are lost or destroyed "and includes the obligation to search for alternate medical records"); *Moore v. Derwinski*, 1 Vet.App. 401, 406 (1991) (holding that VA's duty to assist is "particularly great in light of the unavailability of the veteran's exit examination and full Army medical records").

Further, the Court held in *Dixon v. Derwinski*, 3 Vet.App. 261 (1992), that when VA is unable to locate a claimant's records, it should advise him to submit alternative forms of evidence to support his claim and should assist him in obtaining sufficient evidence from alternative sources. *Id*. at 263. VA did not advise the appellant adequately as to the alternative forms of information and evidence that he could use to establish his claim. In particular, VA failed to advise him that he could submit corroboration in the form of "buddy statements" from fellow service members as to the occurrence of his in-service hip injury. *See Sizemore v. Principi*, 18 Vet.App. 264, 273-74 (2004); *see also Garlejo v. Derwinski*, 2 Vet.App. 619, 620-21 (1992) (concluding that VA breached its duty to assist the appellant by neglecting to inform him that he could ask fellow soldiers to write letters in support of his claim).

Although the record on appeal reveals that VA did search for the appellant's missing SMRs, there is no indication that VA pursued alternative sources of evidence to support the appellant's claim. Specifically, the record contains no indication that VA requested the morning reports from Korea, where the appellant was stationed during the summer of 1969 when the alleged hip injury

occurred. R. at 247-48. In lieu of his SMRs, morning reports could have been used to verify personnel actions, and corroborate the appellant's testimony that he was not available for duty on the dates that he testified that he was injured. *See O'Hare v. Derwinski*, 1 Vet.App. 365, 366 (1991) (noting that when the appellant's SMRs were presumed destroyed, VA attempted to substantiate his claim by examining the morning reports of the military base where he was stationed during the months that he claimed he sustained an injury); *see also Sizemore*, 18 Vet.App. at 267, 273 (explaining that morning reports document daily personnel actions such as persons wounded, killed, or missing in action; and that such reports generally can be obtained from the NPRC). At a minimum, then, VA should have requested the implicated morning reports to assist the appellant in substantiating his claim.

The need to explore alternatives to the appellant's missing SMRs is emphasized by the Board's attempt to draw conclusions from what was not contained in the few medical records remaining in the appellant's file. The Board relied on the fact that "the few [SMRs] which are available are negative for hip problems" as evidence that "clearly refute[d] [the appellant's] later made allegation of service hip problems." R. at 11. On the facts of this case, the Board cannot make findings based on the absence of evidence in the appellant's SMRs when it does not have the benefit of reviewing such records in their entirety. The Court holds, therefore, that the Board erred in finding that VA fulfilled its duty to assist the appellant in obtaining evidence necessary to substantiate his claim. Specifically, VA's failure to request the relevant morning reports constitutes noncompliance with its heightened duty to assist when SMRs are lost. *See Sizemore*, 18 Vet.App. at 273-74; *Russo*, 9 Vet.App. at 51. Likewise, because VA did not advise the appellant that he could submit "buddy statements," VA failed to fully discharge its duty to assist. *See Sizemore*, 18 Vet.App. at 273-74; *Garlejo*, 2 Vet.App. at 620-21. On remand, VA should make reasonable efforts to obtain such reports, statements, or other records that might provide corroboration for the appellant's assertion that he sustained a hip injury in Korea.

### C. Statement of Reasons or Bases

In cases where, as here, the appellant's SMRs have been lost or destroyed, the Board's obligation to provide well-reasoned findings and conclusions, to evaluate and discuss all of the evidence that may be favorable to the appellant, and to provide an adequate statement of the reasons

11

or bases for its rejection of such evidence is also heightened. *See Russo*, 9 Vet.App. at 51; *Ussery v. Brown*, 8 Vet.App. 64, 68 (1995); *Smith v. Derwinski*, 2 Vet.App. 147, 148 (1992); *O'Hare*, 1 Vet.App. at 367. The Board noted in its October 2003 decision that despite repeated attempts to locate them, no SMRs relevant to the appellant's claim were available at the time of the Board's October 2003 adjudication of his claim. R. at 3, 10. The Board failed to recognize, however, that it was under a heightened duty to consider and discuss the evidence of record and supply well-reasoned bases for its decision as a consequence of the appellant's missing SMRs. *See Russo*, 9 Vet.App. at 51; *Ussery*, 8 Vet.App. at 68; *Smith*, 2 Vet.App. at 148; *O'Hare*, 1 Vet.App. at 367. Rather, the Board summarily concluded that because the appellant's few remaining SMRs were silent for any complaint of a hip injury and because he did not allege a hip injury for a number of years after service, "the weight of the credible evidence establishe[d] that the [appellant's] current bilateral hip disability (including avascular necrosis) began years after service, and it was not caused by any incident of service." R. at 11. As discussed previously, the Board's reliance on the lack of a hip disability in the appellant's few available SMRs is misplaced; furthermore, its rejection of the appellant's testimony without properly assessing its weight and credibility is a failure in the Board's obligation to provide an adequate statement of the reasons or bases for its decision. This inadequacy is more pronounced given the Board's heightened duty to explain its findings. We hold, therefore, that the Board has failed to adequately inform the appellant of the reasons or bases for its decision to deny his claim for service connection for his bilateral hip disability, and it has not provided an adequate basis for review.

The appellant argues for reversal of the Board's decision for its failure to find that his testimony was probative and credible. Reversal is the appropriate remedy, however, only in cases in which the only permissible view of the evidence is contrary to the Board's decision. *Gutierrez v. Principi*, 19 Vet.App. 1, 10 (2004); *Johnson v. Brown*, 9 Vet.App. 7, 10 (1996). Where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate, remand is generally the appropriate remedy. *Gutierrez*, 19 Vet.App. at 10; *Tucker v. West*, 11 Vet.App. 369, 374 (1998). In this case, the Board incorrectly applied the law in its assessment of the weight and credibility of the appellant's lay testimony and has provided an inadequate statement of the reasons or bases for its rejection of,

12

or failure to consider, evidence favorable to the appellant. However, we cannot conclude from the evidence of record that the only "permissible view" is a finding that the appellant is entitled to service connection for his bilateral hip disability. *See Gutierrez*, 19 Vet.App. at 10; *Johnson*, 9 Vet.App. at 10. Rather, remand is the appropriate remedy in this case to provide the Board an opportunity to weigh and consider all evidence of record, to evaluate the need for further development in accordance with VA's duty to assist, and to make an appropriate determination based upon such development.

Although the appellant raised other arguments in his brief to the Court, the Court need not address them at this time. *See Best v. Principi,* 15 Vet.App. 18, 20 (2001) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at readjudication, and, of course, before this Court in an appeal, should the Board rule against him."). On remand, the appellant is free to submit additional evidence and raise his arguments to the Board; and, the Board is required to consider them. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372 (1999) (per curiam order). In addition, the Court expects that the Secretary will provide expeditious treatment of this matter on remand. *See* 38 U.S.C. §§ 5109B, 7112.

### III. CONCLUSION

Based on the foregoing analysis, the appellant's and the Secretary's briefs, and a review of the record on appeal, the Board's October 2, 2003, decision is VACATED and the matter REMANDED for readjudication consistent with this decision. On remand, the Board must provide an adequate statement of the reasons or bases for its findings and conclusions on all material issues of fact and law, including a discussion of the weight and credibility it assigns to the appellant's January 1997 testimony, made before he knew that his SMRs were lost, and to Dr. Tabor's medical opinion that the appellant's current hip pain is an "appropriate" symptom of having experienced the in-service hip injury to which the appellant testified. If, following that discussion, the Board concludes that there is insufficient evidence of an in-service incurrence to at least put the evidence in equipoise, it must then remand the appellant's claim to the RO for further development. On such remand, VA must make reasonable efforts to obtain the relevant morning reports from Korea and

to obtain and develop any evidence, including buddy statements, from alternative sources that may corroborate the appellant's testimony and assist him in substantiating his claim. *See* 38 U.S.C. § 7104(d)(1); *Allday*, 7 Vet.App. at 527; *Caluza*, 7 Vet.App. at 506; *Gilbert*, 1 Vet.App. at 56-57.

KASOLD, *Judge*, concurring in part and dissenting in part: Mr. Washington filed his claim more than 10 years ago. Mr. Washington has had three VA examinations. Many of his service medical records were lost by the Secretary. His claim has been remanded once by the Board and twice by this Court. Another remand should occur only if the law requires it and, in this case, I respectfully submit, it does not.

I agree with the majority that the decision of the Board in this instance is legally infirm. However, when a case has been developed for over 10 years and there is evidence supporting award of the claim, and the record before the Court permits only one resolution of the key factual issue – whether the preponderance of the evidence weighs against the claim – reversal, not remand, is warranted. *See Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982) ("Where findings are infirm because of an erroneous view of the law, a remand is the proper course *unless the record permits only one resolution of the factual issue*." (emphasis added)); *see also Padgett v. Nicholson*, 19 Vet.App. 133, 146-47, 151 (2005) (en banc) (holding preponderance of the evidence must be against a claim before the claim can be denied; where factual record is insufficient, remand required), *withdrawn on other grounds*, 19 Vet.App. 334 (2005); *Ortiz v. Principi*, 274 F.3d 1361, 1365 (Fed. Cir. 2001); *Robinette v. Brown*, 8 Vet.App. 69, 76 (1995) ("[T]he unique evidentiary burdens in the VA adjudication system . . . permit a merits disallowance only where the evidence preponderates against the claim."); *Gilbert v. Derwinski*, 1 Vet.App. 49, 54 (1990).

I disagree with the majority's assessment that the agreement and representation by the Secretary and Mr. Washington to the Board that Mr. Washington's testimony was both "competent and probative" was limited to an agreement that his testimony was deemed probative for admissibility purposes as opposed to probative as evidence. Each of the cases relied upon by the majority, *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991); *Ashmore v. Derwinski*, 1 Vet.App. 580, 582 (1991); and *United States v. Welsh*, 774 F.2d 670, 672 (4th Cir. 1985), addresses the admissibility of evidence. *See also Fortuck v. Principi*, 17 Vet.App. 173, 179 (2003) ("When

14

making determinations as to whether new and material evidence has been presented, both this Court and the Board must presume the credibility of the evidence and may not decline to reopen a claim for lack of new and material evidence merely because the proffered evidence is found to lack credibility."). However, nothing in this case supports the conclusion that the agreement was focused on or limited to an admissibility determination.

Rather, every aspect of this case supports the conclusion that the Secretary was acting in his role as the initial trier of fact when he agreed with Mr. Washington – and represented to the Court and to the Board – that Mr. Washington's testimony was probative. *See Godfrey v. Brown*, 7 Vet.App. 398, 410 (1995) ("initial review or determination" on a claim made by agency of original jurisdiction so that Board may review it); *see also Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339, 1347 (Fed. Cir. 2003) ("[Sections] 511(a) and 7104(a) dictate that the Board acts on behalf of the Secretary in making the ultimate decision on claims and provides 'one review on appeal to the Secretary' of a question 'subject to decision by the Secretary' under [section] 511(a)"); *id.* at 1346 ("The Board is 'primarily an appellate tribunal' of the VA that decides appeals from denials of claims for veterans' benefits." (quoting *Scates v. Principi*, 282 F.3d 1362, 1366-67 (Fed. Cir. 2002))). Because the trier of fact cannot find probative that which has no credibility, it is axiomatic that the Secretary, as the initial trier of fact, had agreed with Mr. Washington that his testimony was credible. *See Layno v. Brown*, 6 Vet.App. 465, 469 (1994) (credibility "is a factual matter going to the probative value of the evidence"); *see also Commonwealth Land Title Ins. Co. v. Barber*, 95 B.R. 684, 688 n.13 (1988) ("Unless credible, testimony can carry no probative weight as evidence.")

If the parties wanted to limit their agreement regarding Mr. Washington's testimony to one of admissibility, they could have easily stated that fact; they did not. Moreover, if they were simply agreeing to the admissibility of Mr. Washington's testimony, they should have agreed that the matter would have to be remanded for the RO to assess Mr. Washington's testimony in the first instance, or Mr. Washington would have had to waive consideration of his testimony in the first instance by the Board. *See Bernard v. Brown*, 4 Vet.App. 389, 394 (1993) ("[W]hen . . . the Board addresses in its decision a question that had not been addressed by the RO, it must consider whether the claimant has been given adequate notice of the need to submit evidence or argument on that question

15

and an opportunity to submit such evidence and argument and to address that question at a hearing, and, if not, whether the claimant has been prejudiced thereby"; if neither situation is present, Board must remand the question to the RO for determination). Neither was done.

Further, the Board never treated Mr. Washington's testimony as probative only for purposes of admissibility. If the Board had considered the Secretary's representation of Mr. Washington's testimony as probative only for admissibility purposes, it should have conducted a *Bernard* analysis to assess prejudice before it proceeded to consider his testimony in the first instance or discussed whether Mr. Washington had waived consideration of his testimony in the first instance by the RO. It did neither.[1]

Accordingly, when Mr. Washington's testimony was presented to the Board, it was not being presented as probative – i.e., relevant – for admissibility purposes only. It was being presented as the assessment of the initial trier of fact that Mr. Washington's testimony was probative as evidence – it was credible. *See Layno* and *Commonwealth Land Title Ins. Co.*, both *supra*. Thus, the Board's task was to decide Mr. Washington's appeal of the Secretary's denial of his claim, but to do so within the framework of the Secretary's, as the trier of fact, having already found that Mr. Washington's testimony of an in-service injury was credible.

Finally, although I agree with the majority that the Court should not, in the first instance, determine the corroborative value of the medical evidence in this case with regard to Mr. Washington's statement, that is not the issue. The issue with regard to the medical evidence is one of medical nexus. Dr. Tabor's assessment that Mr. Washington's in-service injury could have been the cause of his current disability must be considered in the context in which it was rendered. Dr.

---

[1] Indeed, the Board rejected Mr. Washington's statement because it was, in the Board's view, uncorroborated and because he was not competent as a layperson to render a medical opinion, not because he lacked credibility. Contrary to the Board's assertions, there is no requirement that Mr. Washington's statement be corroborated, and service connection may be shown through lay evidence. *See Rowell v. Principi*, 4 Vet.App. 9, 19 (1993) (Board must explain why lay evidence alone is insufficient to establish entitlement to benefits; holding lay evidence alone may be sufficient to establish benefits); *Smith v. Derwinski*, 2 Vet.App. 147, 148 (1992) (holding that "VA regulations do not provide that service connection can only be shown through medical records, but rather allow for proof through lay evidence" and that lay evidence may serve to place evidence in equipoise); *Cartright v. Derwinski*, 2 Vet.App. 24, 25-26 (1991) (Board cannot ignore appellant's testimony simply because appellant is an interested party; lay evidence alone may be sufficient to establish benefits); *see also Layno*, 6 Vet.App. at 469 (lay testimony regarding observations of symptoms "may provide sufficient support for a claim of service connection, and it is error for the Board to require medical evidence to support that lay evidence").

16

Tabor did not simply address the in-service injury as a cause of his current disability. Rather, he considered several causative possibilities. He rejected the possibility that his current disability was secondary to his other service-connected disability and he rejected the possibility it was caused by drugs. Most importantly, it is clear from Dr. Tabor's exam report that the only reason he did not definitively conclude that Mr. Washington's in-service injury was the cause of his current disability was because he erroneously thought service connection could only be based on an examination of Mr. Washington's service medical records, which were lost. *See Rowell*, *Smith* and *Cartright*, all *supra* note 1. In this context, with no evidence in the record on appeal to the contrary, Dr. Tabor's statement is evidence in favor of service connection.

It is uncontroverted that Mr. Washington had an in-service injury. There is medical nexus evidence that his current disability is consistent with his reported injury and inconsistent with other considered possible causes. And, after 10 years of development, there is absolutely no evidence against Mr. Washington's claim. The preponderance of the evidence in this record does not weigh against Mr. Washington's claim; indeed, in the absence of any negative evidence, it weighs in his favor. The Board's finding to the contrary should be reversed. *See Pullman-Standard*, *Padgett*, *Ortiz*, *Robinette*, and *Gilbert*, all *supra.*

For the foregoing reasons, I respectfully dissent.