Citation Nr: 1806343 
Decision Date: 01/11/18 Archive Date: 02/07/18

DOCKET NO. 05-19 750 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUE

Entitlement to service connection for hepatitis C with peripheral neuropathy.


REPRESENTATION

Appellant represented by: Joseph R. Moore, Attorney at law


WITNESSES AT HEARING ON APPEAL

Appellant, spouse


ATTORNEY FOR THE BOARD

A.P. Armstrong, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1971 to July 1972. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2003 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO). The Veteran and his wife testified before the undersigned in an October 2007 hearing. A hearing transcript is of record. The Board previously remanded this case in May 2008 and denied the claim in August 2012. The Veteran appealed to the Court of Appeals for Veterans' Claims (Court), which granted a Joint Motion for Remand and returned the case to the Board in July 2013. The Board again remanded in May 2015 and denied the claim in June 2017.


ORDER TO VACATE

The Board may vacate an appellate decision at any time upon request of the appellant or his or her representative, or on the Board's own motion, when an appellant has been denied due process of law or when benefits were allowed based on false or fraudulent evidence. 38 U.S.C. § 7104(a) (2012); 38 C.F.R. § 20.904 (2017). Prior to issuance of the June 13, 2017 Board decision, the Veteran, through his representative, requested a 90-day stay on adjudication in order to provide additional evidence. The Board granted the 90-day extension motion in a March 20, 2017 letter. The Board decision was therefore issued during the extension period. The Veteran submitted new evidence on June 19, 2017 that was not considered by that decision. The June 13, 2017 Board decision is vacated to allow the Veteran the benefit of the full 90-day extension and consideration of the new evidence. See 38 U.S.C. § 7104; 38 C.F.R. § 20.904. 


FINDINGS OF FACT

Resolving doubt in the Veteran's favor, he contracted hepatitis C in service, and peripheral neuropathy is due to hepatitis C.


CONCLUSION OF LAW

The criteria for an award of service connection for hepatitis C with peripheral neuropathy have been met. 38 U.S.C.A. § 1110 (2012); 38 C.F.R. § 3.303 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

As this decision grants the benefit sought on appeal, the Veteran could not be prejudiced and discussion of VA's duties of notice and assistance is unnecessary.

The Veteran contends that he contracted hepatitis C in service.

Service connection will be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish entitlement to service-connected compensation benefits, a Veteran must show "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service-the so-called 'nexus' requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010). 

The Board must consider all the evidence of record and make appropriate determinations of competence, credibility, and weight. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). When there is an approximate balance of positive and negative evidence regarding any material issue, all reasonable doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.

The Veteran and his wife are competent to report symptoms and experiences observable by their senses; however, they are not competent to diagnose or determine the cause of complex infections as this requires specialized medical training and testing. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); 38 C.F.R. § 3.159(a). 

The Board has reviewed the record and finds that the criteria for service connection for hepatitis C with peripheral neuropathy have been met. See 38 C.F.R. § 3.303.

First, the evidence shows the Veteran has hepatitis C and peripheral neuropathy currently. VA and private records evidence treatment for hepatitis C and peripheral neuropathy. The March 2016 VA examiner diagnosed hepatitis C and peripheral neuropathy. That examiner along with a private provider in October 2006 associated peripheral neuropathy with hepatitis C. Private treatment records show the first diagnosis of hepatitis C in 2000. Records furnished by the Social Security Administration (SSA) include treatment for polyneuropathy in September 1999 with reports of symptoms beginning three years prior. The Veteran and his wife reported that he began having chronic pain in the 1980s but the symptoms became more prevalent around 1997. See Board hearing.

Next, the Veteran reports potential exposures to hepatitis C infection during service. In statements to VA, the Veteran reported receiving jet injector immunizations during advanced individual training, sharing razors and dry shaving as punishment for stubble, bloody fights in the barracks, and knife games where his hands were nicked by knives with blood on them. Service records do not discuss treatment for a wound or incident of blood exposure.

The Veteran and his wife submitted studies and a Federal Drug Administration hearing transcript discussing a correlation between Vietnam era veterans who received jet injector inoculations and increased rates of hepatitis C infection. The VA literature submitted includes a study examining this possible link between hepatitis C infection and high-speed jet injectors. After accounting for the effects of known risk factors, the study found no such association. The researchers found that if transmission of hepatitis C did occur via the use of jet injectors, it happened in isolated circumstances or on a small scale. The Veteran submitted a list of known risk factors for hepatitis C contraction that included sharing toothbrushes and razors. The October 2009 VA examiner confirmed that sharing of razors is a potential route of hepatitis transmission.

The record contains a split of medical opinions on how the Veteran could have contracted hepatitis C. Medical literature notes that hepatitis C was discovered in 1989. A conclusive determination of when the Veteran contracted hepatitis C is impossible. However, various private and VA doctors have offered opinions on the likely source and timeframe of contraction. In a March 2003 letter, Dr. ELB wrote that it is possible that the Veteran contracted hepatitis C while in service, as well as other sources. A June 2006 statement from Dr. ADS explains that after speaking with the Veteran in detail, he concluded it is more likely than not that the Veteran contracted hepatitis C virus while in service. In October 2006, Dr. GA wrote that after reviewing the Veteran's history and pertinent laboratory data and discussing the case with other specialists, it is more likely than not that the Veteran contracted hepatitis C from his military service.

The opinions from Drs. ELB, ADS, and GA are all insufficient for purposes of adjudication because the doctors did not provide any rationale explaining why they believe the Veteran contracted hepatitis C in service. See Stefl v. Nicholson, 21 Vet. App. 120 (2007) (conclusory medical opinions without rationale are not adequate). Dr. ELB acknowledged that other sources of contraction were possible.

The October 2009 VA examiner discussed the Veteran's contentions but explained that she could not render an opinion on the etiology of the Veteran's hepatitis C without resorting to mere speculation because there is no documentation to know how the Veteran contracted the illness. The examiner noted that there was no evidence in service records of a wound or other incident in which the Veteran could have contracted hepatitis C. She explained that while needleless injectors have not been established as a source of hepatitis C transmission, sharing of razors is a potential route of transmission. 

Several VA providers gave negative opinions on the relationship to service. In a June 2011 Veterans Health Administration (VHA) opinion, Dr. DM discussed intravenous (IV) drug use and found that the Veteran's hepatitis C was less likely than not related to service. In an addendum VHA opinion, Dr. MG responded to misinformation from the June 2011 opinion. Dr. MG wrote that there is evidence in the record of illicit drug use, there is no evidence of blood exposure or transfusion in service, the fact that the Veteran was not hospitalized in 1974 does not change the medical opinion, and the most likely source of hepatitis C is illicit drug use. Dr. MG concluded that it is more likely that the Veteran acquired hepatitis C through injection drug use than exposure in service. In a September 2014 VHA opinion, Dr. AM explained that the likeliest source of the Veteran's hepatitis C is intravenous drug use, IV drug use is a well-known risk factor for hepatitis, and jet injectors, shared razor blades, cuts, knife games, and trace elements of blood on door handles are highly unlikely in comparison to IV drug use. The May 2016 VA examiner discussed the Veteran's contentions of exposure from razors, blood in barracks, and jet injector vaccines and IV drug use. The examiner found the most likely source of infection is from drug use, and in this Veteran's case, while there are multiple documented risk factors, IV drug use would be the most likely explanation.

The record contains conflicting evidence on the Veteran's history with drug use. SSA furnished several copies of private treatment records. A September 1999 record shows a history of alcohol and heroin abuse, and a March 2003 provider assessed the Veteran with narcotic abuse and drug seeking behavior. A June 2000 record from the North Carolina disability determination services notes no known history of blood transfusions but a report of IV drug abuse in the Past. A January 2004 treatment record shows no history of blood transfusions or IV illicit drugs. During June 2005 VA treatment, the Veteran reported experimenting with acid prior to becoming alcohol and drug free in 1986. May 2008 VA records note an extensive history of substance abuse from age 17 to 30, including cocaine, MDA, and IV heroin for three to four months prior to a divine intervention and becoming a pastor. A June 2006 VA treatment record notes the Veteran's report of experimenting with marijuana, alcohol, and LSD. A November 2008 treatment record shows the response of "never" next to recreational or illicit drug use. 

In December 2002, the Veteran was hospitalized for methadone intoxication, acute encephalopathy, and methadone and Xanax abuse. Records from that time describe the Veteran as a historic drug user who denied current drug use but endorsed occasional use of cocaine. The Veteran specifically disagrees with these records saying that he was profiled as a drug user because of his medically prescribed methadone. In support of his contentions, he submitted a letter from Dr. RHM stating the Veteran had a legitimate medical need for opioids and benzodiazepines and took methadone for pain. During the Board hearing, the Veteran's wife reported that the Veteran began taking methadone to control the pain he experienced since the 1980s when he "chased opiates through a dentist" and let his teeth rot to get pain medication. The Veteran's mother wrote in a February 2004 statement that she and her husband had to put the Veteran in a rehab facility in 1983. In the hearing and other statements, the Veteran denied ever using IV drugs. In a November 2003 questionnaire, the Veteran indicated no history of IV drugs or intranasal cocaine use. In February 2010 correspondence, the Veteran wrote that he once used heroin mixed with cocaine orally but did not have a history of drug abuse. 

The weight of the evidence demonstrates that the Veteran used illicit drugs in the past and struggled with addiction. There are consistent statements from the Veteran and his family, along with medical documentation, that he used drugs and struggled with addiction prior to becoming a pastor in the mid-1980s. The evidence does not, however, clearly establish the Veteran's use of IV drugs, which has been noted as the most likely source of hepatitis C infection. On multiple occasions, the Veteran denied use of IV drugs. While the record shows drug addiction, the evidence is not consistent on the form of drugs used. 
 
Some of the VA opinions, including the June 2011 opinion, incorrectly rely on a fact pattern of another veteran who used IV drugs and was hospitalized in 1974 for drug abuse and viral hepatitis. This fact pattern was mistakenly drawn from a copy of a Board decision submitted by the Veteran in support of his claim. These opinions are not probative to the extent that they rely on this incorrect fact pattern. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (an opinion based upon an inaccurate factual premise has no probative value.). Additionally, the opinions have less probative value when they conclude that hepatitis C was caused by IV drug use, which has not been conclusively established by the evidence. 

More importantly, in a June 2017 opinion, Dr. PC considered illicit drug use and found that given the Veteran's illness presentation, he likely contracted hepatitis at the time of service. Dr. PC explained that most patients with hepatitis C virus are asymptomatic and chronic infection progresses slowly. He noted IV drug use is a significant risk factor for hepatitis C but that in many parts of the world, shaving by barbers with communal razors is thought to be a common mode of transmission of the virus. Finally, Dr. PC concluded that because the Veteran was diagnosed with hepatitis C in 2000, he was more likely than not infected in the early 1970s. Exposure from drug use in the mid-1980s would be a highly unusual, rapid progression of the disease to lead to diagnosis in 2000. See June 2017 opinion. Research from the National Institute of Health shows a similar illness progression, noting that cirrhosis often occurs over a 20 year period in hepatitis C patients. 

Dr. PC's opinion is highly probative with the most complete consideration of the evidence and clear rationale. He considered drug use and explained why contraction in service is more likely. As discussed above, the other medical opinions are less probative. Given the weight placed on Dr. PC's opinion, the Board finds that the Veteran contracted hepatitis C in service, and service connection is warranted. See 38 C.F.R. § 3.303.


ORDER

The June 13, 2017 decision to deny service connection for hepatitis C with peripheral neuropathy is vacated.

Service connection for hepatitis C with peripheral neuropathy is granted.



____________________________________________
D. C. Spickler
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs