﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/19 Archive Date: 09/27/19

DOCKET NO. 190325-5630
DATE: September 30, 2019

ORDER

The claim of entitlement to service connection for diabetes mellitus, type II, (hereinafter DMII), to include as due to herbicide exposure is granted.

The claim of entitlement to service connection for bilateral peripheral neuropathy, left lower extremity (LLE) and right lower extremity (RLE), to include as secondary to service connected disabilities is granted.

FINDINGS OF FACT

1. The Veteran was exposed to Agent Orange during his service at the Royal Thai Air Force Base Ubon during his active military service in Thailand.

2. The Veteran has a present diagnosis of DMII.

3. The Veteran’s bilateral peripheral neuropathy was incurred in, caused by, or aggravated by active duty service proximately due to or aggravated beyond its natural progression by his service-connected disabilities.

CONCLUSIONS OF LAW

1. The criteria to establish service connection for DMII have been met. 38 U.S.C. §§ 1101, 1110, 1113, 1116, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2018).

2. The criteria for establishing entitlement to service connection bilateral peripheral neuropathy, to include as secondary to service-connected disabilities, have been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.310 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had honorable active duty service with the United States Air Force from August 1969 to July 1973.

These matters are before the Board of Veteran’s Appeals (Board) from the June 2017 and January 2019 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) that denied service connection for DMII and bilateral peripheral neuropathy LLE and RLE.

The Board notes that the rating decision on appeal was issued in June 2017. In July 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). The Veteran selected a higher-level review and a new rating decision was issued in January 2019.

Evidence was added to the claims file during a period of time when new evidence was not allowed. Therefore, the Board may not consider this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 20.300). The Veteran may file a Supplemental Claim and submit or identify this evidence. 84 Fed. Reg. 138, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 3.2501). If the evidence is new and relevant, VA will issue another decision on the claim, considering the new evidence in addition to the evidence previously considered. Id. Specific instructions for filing a Supplemental Claim are included with this decision.

The Board notes that the rating decision of January 2019 characterized the Veteran's case as re-opened due to New and Relevant Evidence. (The new and material evidence regarding service connection for disabilities claimed under the Appeals Modernization Act (AMA) has been recharacterized to reflect the applicable evidentiary standard. 84 Fed. Reg. 138, 172, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. §§ 3.2501 (a)(1), 19.2)). However, the June 2017 rating decision was not final, as the Veteran's Notice of Disagreement (NOD) was filed timely; therefore, the New and Relevant Evidence standard is not applicable.

The Board further notes that the Veteran’s appeal for service connection for posttraumatic stress disorder (PTSD) is not before the Board as the Veteran has also selected this claim to be under the modernized review system and has filed a supplemental claim for this issue. Therefore, this issue will be addressed in a future rating decision by the RO at a later date.

SERVICE CONNECTION 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004).

The Secretary shall consider all information and lay and medical evidence of record in a case and make appropriate determinations as to competence, credibility, and weight. 38 U.S.C. § 5107; 38 C.F.R. § 3.303; Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience, if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159 (2018).

Certain chronic diseases, including DMII may be presumed to have been incurred in or aggravated by service if manifested to a compensable degree within one year of discharge from service. See 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. To show chronicity there is a requirement of a combination of manifestations sufficient to identify a disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word “chronic”. 38 C.F.R. § 3.303(b). In these types of cases the disease is presumed under the law to have had its onset during service even though there is no evidence of that disease during service. 38 C.F.R. § 3.307(a). This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. § 1113; 38 C.F.R. §§ 3.307(d), 3.309(a).

Pursuant to 38 C.F.R. § 3.309(a) (2018) if a disease is not shown to be chronic during service or the one-year presumptive period, then service connection may also be established by showing a continuity of symptomatology after service. 38 C.F.R. § 3.303(b) (2018). Continuity of symptomatology may be established by demonstrating: (1) that a condition is shown in service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Id.

However, to use continuity of symptoms to establish a direct service connection is limited only to those disease listed under 38 C.F.R. § 3.309(a) and does not apply to other disabilities.

When there is an approximate balance between positive and negative evidence, equipoise, the benefit of the doubt doctrine must apply in favor of the Veteran. But when the preponderance of the evidence weighs against the claims of the Veteran the claim will be denied on its merits, and when the preponderance of the evidence weighs for the claims of the Veteran the claim will be granted on its merits. In those cases, the benefit of the doubt doctrine is inapplicable. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Entitlement to service connection for DMII, as due to herbicide exposure

The Veteran contends that he is entitled to service connection for DMII as caused by exposure to herbicide agents in service. Having reviewed all of the relevant evidence of record, the Board concludes that the Veteran's DMII warrants service connection as he was presumptively exposed to herbicide agents during the Vietnam War.

Veterans who served in the Republic of Vietnam during the Vietnam era are presumed to have been exposed to certain herbicide agents (e.g., Agent Orange). 38 U.S.C. § 1116; 38 C.F.R. § 3.307. In the case of such a veteran, service connection for certain diseases will be presumed if they become manifest to a degree of 10 percent or more at any time after service. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307, 3.309.

While all Veterans who served in the Republic of Vietnam, during the Vietnam Era are presumed to have been exposed to herbicide agents, the Veteran's service personnel records do not show that he served in Vietnam, nor does he claim that he did. Instead, the Veteran claims exposure to herbicide agents while stationed in Thailand.

VA procedures for verifying exposure to herbicide agents in Thailand during the Vietnam Era are detailed in the VBA Adjudication Manual, M21-1, IV.ii.2.C. VA has determined that there was significant use of herbicide agents on the fenced-in perimeters of military bases in Thailand intended to eliminate vegetation and ground cover for base security purposes as evidenced in a declassified Vietnam era Department of Defense document titled "Project CHECO Southeast Asia Report: Base Defense in Thailand." Special consideration of herbicide agent exposure on a facts-found or direct basis should be extended to those Veterans whose duties placed them on or near the perimeters of Thailand military bases. This allows for presumptive service connection of the diseases associated with herbicide agent exposure.

The majority of troops in Thailand during the Vietnam Era were stationed at the Royal Thai Air Force Bases of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat, and Don Muang. If a veteran served on one of these air bases as a security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by MOS (military occupational specialty), performance evaluations, or other credible evidence, then herbicide exposure should be acknowledged on a facts-found or direct basis. However, this applies only during the Vietnam Era, from February 28, 1961, to May 7, 1975. See M21-1, M21-1, IV.ii.1.H.5.b.

In adjudicating these claims, the Board must assess the competence and credibility of the Veteran. Washington v. Nicholson, 19 Vet. App. 362 (2005). Lay testimony is competent to establish the presence of observable symptomatology and "may provide sufficient support for a claim of service connection." Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Falzone v. Brown, 8 Vet. App. 398, 405 (1995) (lay person competent to testify to pain and visible flatness of his feet).

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded to the claimant.

The Veteran has been diagnosed with DMII and asserts it was incurred in service due to Agent Orange exposure while stationed in Thailand.

A review of the Veteran's military personnel records reveals that he was stationed at Ubon Air Base in Thailand, during his active duty service, this is a favorable finding made by the RO in the January 2019 rating decision. His DD Form 214 indicated that his military occupational specialty (MOS) was an aircraft mechanic and an aircraft maintenance specialist/technician.

The Veteran also submitted a statement that indicated his service at Ubon and Udorn air bases, where his duty requirements placed him on the flight line which was near the perimeter of the base. He indicated that he jogged regularly along the perimeter fence, that he took “smoke breaks” near the perimeter fence, and that his barracks were along the perimeter of the base, and that he was daily at or along the perimeter fence. The Veteran’s affidavit submitted in December 2016 also indicated the Veteran witnessed the spraying of vegetation at Ubon, his daily proximity to the perimeter both on the flight line and off-duty, and his description of going on and off the base regularly by either taxi or by foot. The Board finds that the Veteran is competent to report service near the perimeter of the base while stationed in Thailand. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). Absent evidence to the contrary, the Board also finds such statements to be credible.

The Board finds these statements to be both competent and credible to determine that the Veteran was present daily on the perimeter of the base where Agent Orange was sprayed. As such, the Board concludes that the Veteran was exposed to herbicide agents while serving on Ubon Air Base during the Vietnam War.

The Veteran also submitted photographs of Ubon Air Base that indicated the proximity of the flight line and the perimeter and arm/de-arm area, also pictures of the Ubon Air Base barracks with fencing in the background. The Board finds that the photographs of the runway at the Ubon Air Base and living quarters reveal that the Veteran both worked and slept in close proximity to the perimeter. The Board notes that the photographs were not the personal photographs of the Veteran but of the Ubon Air Base, and with written notations.

The evidence of record also clearly establishes that the Veteran had service at one of the designated Thailand military bases. He also served on active duty for a period of the Vietnam era during which VA has acknowledged that herbicides were used near those air base perimeters in Thailand.

In light of the above evidence including the lay statements of the Veteran and photographs, the Board finds that the Veteran had service in Ubon Air Base in Thailand, and his duties placed him on the perimeter. As such, he is presumed to have been exposed to herbicide agents. See 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102. Post-service treatment records confirm the Veteran's diagnoses of DMII. Therefore, service connection is warranted for DMII.

In sum, resolving all doubt in favor of the Veteran, the weight of the evidence establishes that the Veteran has a diagnosis of DMII, and that he had presumed herbicide agent exposure during service. 38 C.F.R. §§ 3.102, 3.307(a)(6), 3.309(e), 3.310(a). Therefore, service connection is warranted for DMII and the Veteran’s claim for service connection is granted.

Entitlement to service connection for bilateral peripheral neuropathy LLE and RLE, to include as secondary to service connected disabilities

The Veteran contends that he is entitled to service connection for bilateral peripheral neuropathy LLE and RLE, due to his DMII. He specifically contends that his bilateral peripheral neuropathy LLE and RLE is directly due to his DMII.

The Board notes that in this opinion, as discussed above, the Veteran has been granted service connection for DMII, to include as due to herbicide exposure.

In determining whether a disability is to be granted a secondary service connection the VA must find 1) that there is a current disability that is not service connected; and 2) that there is at least one service connected disability; and 3) evidence that the non-service connected disability is either, a) proximately due to or the result of a service connected disability; or; b) aggravated beyond its natural progress by a service connected disability. 38 C.F.R. § 3.310; see also Allen v. Brown, 7 Vet. App. 439 (1995).

When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310 (a).

The Veteran was diagnosed with neuropathy in 2011. The Veteran is also service-connected for DMII as indicated above. The Veteran does not have any other service-connected disabilities at the time of this opinion. As this opinion is granting service connection for DMII, the Veteran has met the first and second elements of service connection.

The remaining question before the Board is whether the Veteran’s peripheral neuropathy was proximately due to or the result of a service connected disability or aggravated beyond its normal progression due to a service connected disability. The Board finds that, as discussed below, the preponderance of the evidence weighs in favor of the Veteran’s claim.

To date the Veteran has not received a VA examination; however, after the review of the Veteran’s VA treatment records the Board notes that the Veteran was diagnosed with diabetic peripheral neuropathy. The doctor’s note in September 2012, indicated that the Veteran’s “likely foot pain is related to low back pain and diabetes combination.” The Veteran was noted as having pain in his feet for the past 2-3 years that has gotten progressively worse, with sharp pain in his feet and over the counter the medications do not work any longer. During the neurological assessment the Veteran was found to have protective sensation that was intact with SW 5.07/10g monofilament, Tinnel’s sign at the fibular and tarsal tunnel’s and overlying the superficial branch of the deep peroneal nerve bilaterally. 

The Board finds that the Veteran’s VA records are competent, credible, and with significant probative weight. In finding the VA treatment records have significant probative weight, and since there is no other competent medical opinion to refute the findings in the treatment records, they are the determining factor in the Veteran’s claims. 

Additionally, the record only contains positive evidence from the VA treatment records and during initial development no opinion was obtained to contradict the opinion. In other words – the Board only has medical evidence of record that is beneficial to the Veteran and any remand would seemingly be solely for the purpose of developing negative evidence. With no contradictory credible medical evidence, the Board must grant service connection in this case.

When there is an approximate balance between positive and negative evidence the benefit of the doubt doctrine must apply in favor of the Veteran. The preponderance of the evidence of record before the Board here indicates that the Veteran’s claims must be resolved in favor of the Veteran, and the benefit of the doubt doctrine is inapplicable. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

(CONTINUED NEXT PAGE)

Therefore, the Veteran’s claim of service connection for bilateral peripheral neuropathy of the lower extremities, to include as secondary to the Veteran’s service connected DMII is warranted.

 

B. MULLINS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board C.A. Teich, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.