Citation Nr: 1749159 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 13-11 092 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Paul, Minnesota


THE ISSUES

1. Entitlement to a disability rating in excess of 60 percent for coronary artery disease (CAD).

2. Entitlement to a total disability rating for compensation purposes based upon individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

The Veteran and K. T.



ATTORNEY FOR THE BOARD

J. Baker, Associate Counsel


INTRODUCTION

The Veteran had active service from February 1969 to February 1971. 

These matters come to the Board of Veterans Appeals (Board) on appeal of an October 2013 rating decision by the Regional Office (RO) in St. Paul, Minnesota. The Veteran testified at a hearing before the undersigned Veterans Law Judge in May 2016. A transcript of that hearing is of record. These matters were previously before the Board in September 2016, when they were remanded for further development. The matters now return to the Board for appellate consideration. 

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. For the period prior to February 28, 2017, the most probative evidence concerning the Veteran's coronary artery disease does not show evidence of congestive heart failure, or workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope, or left ventricular dysfunction with an ejection fraction of less than 30 percent.

2. For the period from February 28, 2017, the most probative evidence concerning the Veteran's coronary artery disease shows workload of less than 3 METs resulting in dyspnea and fatigue.



CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 60 percent for coronary artery disease, prior to February 28, 2017, are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.0, 4.7, 4.104, Diagnostic Code 7005 (2016). 

2. The criteria for a rating of 100 percent for coronary artery disease from February 28, 2017 have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.0, 4.7, 4.104, Diagnostic Code 7005 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duty to Notify and Assist

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

General Legal Criteria

Disability ratings are determined by the application of VA's Schedule for Rating Disabilities (Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Pertinent regulations do not require that all cases show all findings specified by the Schedule, but that findings sufficient to identify the disease and the resulting disability and above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21; see also Mauerhan v. Principi, 16 Vet. App. 436 (2002).

Further, a disability rating may require re-evaluation in accordance with changes in a veteran's condition. The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as "staged ratings," whether it is an initial rating case or not. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999); Hart v. Mansfield, 21 Vet. App. 505, 519 (2007).

Increased Rating - Coronary Artery Disease

Under Diagnostic Code 7005, arteriosclerotic heart disease (coronary artery disease) resulting in more than one episode of acute congestive heart failure in the past year, or; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent, is rated 60 percent disabling. Arteriosclerotic heart disease resulting in chronic congestive heart failure, or; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent, is rated 100 percent disabling. 38 C.F.R. § 4.104, Diagnostic Code 7005.

For rating diseases of the heart, one MET (metabolic equivalent) is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for rating, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 38 C.F.R. § 4.104, Note 2.

In addition, the Rating Schedule provides that, when rating under Diagnostic Codes 7000 through 7007, 7011, and 7015 through 7020, the following provisions apply: (1) Whether or not cardiac hypertrophy or dilatation (documented by electrocardiogram, echocardiogram, or X-ray) is present and whether or not there is a need for continuous medication must be ascertained in all cases. (2) Even if the requirement for a 10 percent rating (based on the need for continuous medication) or a 30 percent rating (based on the presence of cardiac hypertrophy or dilatation) is met, METs testing is required in all cases except when there is a medical contraindication, when the left ventricular ejection fraction has been measured and is 50 percent or less, when chronic congestive heart failure is present or there has been more than one episode of congestive heart failure within the past year, and when a 100 percent evaluation can be assigned on another basis. (3) If left ventricular ejection fraction (LVEF) testing is not of record, evaluation should be based on alternative criteria unless the examiner states that the LVEF test is needed in a particular case because the available medical information does not sufficiently reflect the severity of the Veteran's cardiovascular disability. 38 C.F.R. 4.100 (2016).

Analysis

As discussed in the September 2016 Board remand, the Veteran did not properly perfect his appeal for an increased rating for CAD. However, pursuant to Percy v. Shinseki, 23 Vet. App. 37 (2009), the Board accepted appellate jurisdiction over the issue of entitlement to a rating in excess of 60 percent, because the RO issued the Veteran a supplemental statement of the case addressing that issue. The RO's actions were in response to the Veteran's application for a TDIU, which were explicitly construed as a claim for an increased rating for CAD. Thus, the period on appeal is up to one year prior to the date of receipt of that claim for an increased rating, on April 19, 2013. During the entire period on appeal, the Veteran's CAD has been rated at 60 percent under Diagnostic Code 7005. 

The Veteran attended VA cardiac examinations in June 2013, August 2014, September 2015, and February 2017. The examinations prior to February 2017, at worst, found that the Veteran's physical activity would be limited to at least 3-5 METs before resulting in dyspnea, fatigue, and dizziness. The probative medical evidence of record is consistent with that level of limitation. The June 2013 echocardiogram does not indicate the Veteran's LVEF, however, a report of a March 2017 echocardiogram showed an ejection fraction of 60-65 percent. This is consistent with the finding of an LVEF of 55 percent in March 2012 and September 2015. During the period on appeal, the record shows that the Veteran's LVEF was at worst 55 percent. There was no evidence of chronic congestive heart failure, cardiac hypertrophy, or dilation. 

The Veteran's February 28, 2017 examination found that METs testing showed dyspnea and dizziness at 1-3 METs, which is consistent with eating, dressing, and slow walking. At his May 2016 hearing, the Veteran testified that he became exhausted from using a riding lawnmower, and regularly became dizzy and fatigued after walking more than half a block. Thus, the Veteran is entitled to a 100 percent rating from February 28, 2017. 

To the extent that the Veteran contends that his CAD is more severe than reflected by his staged disability ratings assigned herein, the Board observes that the Veteran can attest to factual matters of which he has first-hand knowledge and understanding as a lay person, such as fatigue, shortness of breath, and dizziness. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005); see also Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, he is not competent to state that his symptoms are of severity sufficient to warrant a higher rating under VA's diagnostic codes contemplating METs levels or LVEF because such an opinion requires medical expertise and knowledge that he has not been shown to possess. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Accordingly, the Board attaches more probative weight to the medical records and clinical findings from the skilled medical professionals who conducted the VA cardiac examinations rather than to the Veteran's lay statements. 

In consideration of the above, the Board finds that the criteria for a rating in excess of 60 percent for CAD are not met prior to February 28, 2017, and the criteria for a rating of 100 percent are met from February 28, 2017. Prior to February 28, 2017, the most probative medical evidence of record does not show heart disease resulting in chronic congestive heart failure, or; workload of 3 METs or less resulting in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. The evidence shows METs limited to from 1-3 from February 28, 2017. 

Neither the Veteran nor his representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, No. 15-2818, 2017 U.S. App. Vet. Claims LEXIS 319, *8-9 (Vet. App. March 17, 2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).


ORDER

Entitlement to a disability rating in excess of 60 percent for CAD prior to February 28, 2017, is denied.

Entitlement to a disability rating of 100 percent for CAD from February 28, 2017 is granted.


REMAND

Unfortunately, the issue of entitlement to a TDIU must be remanded for further development before a decision may be made on the merits.

Pursuant to the September 2016 Board remand, the RO scheduled the Veteran for a VA examination to determine the functional impact of his service-connected disabilities. The Veteran was examined in February 2017, and the examiner provided an April 2017 addendum opinion. In a May 2017 rating decision, the RO granted entitlement to service-connection for an anxiety disorder, which is associated with the Veteran's already service-connected depressive disorder, with anxiety. The RO has not considered this anxiety disorder in its prior adjudication of TDIU. Further, the 2017 VA examinations and opinions with regard to TDIU did not address the Veteran's service connected depression or anxiety. Thus, the Board finds the findings of the examiner are inadequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Veteran specifically indicated that he experienced anxiety since he had started driving again in his application for a TDIU. The Veteran's last VA examination for his depression was more than one year prior to the receipt of his claim for a TDIU, in January 2012. Thus, a new examination and opinion are necessary in order to comply with the directives of the September 2016 Board remand. Stegall v. West, 11 Vet. App. 268 (1998).

Accordingly, the case is REMANDED for the following action:

1. Forward the record, and a copy of this Remand, to the examiner who performed the February 2017 VA examinations for completion of an addendum opinion. If that examiner is unavailable, or a new examination is needed, schedule the Veteran for a VA examination with a suitably qualified examiner with respect to his claim for a TDIU. The claims file, including a copy of this Remand, must be made available to the examiner for review and the examiner must indicate that such a review was completed. 

The examiner must address the extent of functional impairment due to the Veteran's service-connected depression with regard to the Veteran's ability to maintain gainful employment. It is the examiner's responsibility to furnish a full description of the effects of the service-connected depression upon the Veteran's employment and to consider his prior employment and education history.

Rationale must be provided for the opinion proffered.

2. Readjudicate the issue of entitlement to a TDIU. If the benefit sought remains denied, issue a Supplemental Statement of the Case to the Veteran. Provide an appropriate amount of time for response. Thereafter, return the case to the Board for review.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs